**GEORGIA–PACIFIC CORPORATION,**
Appellee,

v.

**ALLIANZ INSURANCE COMPANY,**
Appellant.

**No. 92–1635WA.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1992.

Decided Oct. 19, 1992.

Rehearing Denied Dec. 2, 1992.

Dennis L. Shackleford, El Dorado, Ark., argued (William P. Linhoff, Jr. and John P. Bovich, Newport Beach, Cal., on the brief), for appellant.

Richard Griffin, Crossett, Ark., argued (Gary M. Draper, on the brief), for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Georgia–Pacific brought this action against its insurer, Allianz Insurance Co., after Allianz denied coverage for damage to one of Georgia–Pacific's Yankee dryers. The jury found the loss was covered and awarded Georgia–Pacific the full amount of its claim, over four million dollars. The District Court[1] denied Allianz's motion for a new trial and granted Georgia–Pacific's motion for prejudgment interest, attorneys' fees, and a twelve per cent. penalty under state law. Allianz appeals.

Georgia–Pacific, which operates industrial facilities throughout the United States, maintained a boiler and machinery policy with Allianz, effective from April 1, 1986, through April 1, 1989. The policy insured Georgia–Pacific against damage to defined "objects" at Georgia–Pacific's facilities caused by an "accident," as that term was defined in the policy. The policy also covered business-interruption losses sustained as a result of an accident.

One of the facilities insured under this policy was a pulp and paper mill in Crossett, Arkansas. Georgia–Pacific operates four paper-making machines at this facility, each machine containing a Yankee dryer. (The Yankee dryer is a large rotating drum used to dry tissue paper.) On February 15, 1989, Georgia–Pacific discovered a crack in one "head" of Yankee Dryer No. 7. Geor-gia–Pacific immediately shut down the entire machine, removed the dryer, and stored it. To mitigate its business-interruption loss, Georgia–Pacific refurbished an old dryer, Yankee Dryer No. 6, which had been taken out of service in 1981, and installed it in the paper machine as a temporary substitute. For the permanent replacement, rather than repairing Yankee Dryer No. 7, Georgia–Pacific chose to buy a new dryer with a larger capacity. Georgia–Pacific has received the new dryer, but has not yet installed it.

In July of 1989, Georgia–Pacific filed a claim with Allianz. The claim requested coverage for (1) the cost to remove, repair, and reinstall Yankee Dryer No. 7, including extra expense to expedite the repairs; (2) the cost to refurbish and install Yankee Dryer No. 6; (3) the business-interruption loss sustained from the date of the accident until Dryer No. 6 was refurbished and installed as a replacement; and (4) the estimated business-interruption loss to remove Dryer No. 6 and reinstall the repaired Dryer No. 7. Allianz denied the claim, and Georgia–Pacific brought this action. After the jury awarded Georgia–Pacific all of the damages it requested, Allianz appealed.

The dispute in this case is not whether the policy covers the claim, but how much of the claim is covered. Allianz argues that the cost to reinstall Dryer No. 7 and the cost to expedite the physical repair of Dryer No. 7 are not recoverable, since Dryer No. 7 not only was never repaired, but will never be reinstalled. In addition, Allianz objects to the recovery of the estimated business-interruption loss which would have occurred when No. 6 was being removed and No. 7 was being reinstalled, since, having never been sustained, the loss is not "actual." We reject Allianz's arguments and affirm the judgment of the District Court.

## I.

■ Allianz's first claim is that it is not responsible for the cost to remove Dryer

---

1. The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

No. 6 and reinstall Dryer No. 7, since this has not and never will occur. Allianz did not, however, appeal the award of damages for the repair of Dryer No. 7, even though Dryer No. 7 has not been and never will be repaired. We hold that the policy covers both of these costs for the same reason. That is, both would have been necessary had Georgia–Pacific chosen to repair, as it was entitled to do under the policy, rather than replace, Dryer No. 7. The fact that the insured chose a more expensive option—to replace the damaged dryer with a new, larger-capacity dryer—does not mean that it cannot recover the cost of the cheaper option allowed by the policy.

For covered losses, which this loss is, the policy provides as follows:

g. Valuation

(1) We will pay you the amount you spend to repair or replace your property directly damaged by an "accident." Our payment will be the smallest of:

(a) The Limit of Insurance;

(b) The cost at the time of the "accident" to repair the damaged property with property of like kind, capacity, size and quality;

(c) The cost at the time of the "accident" to replace the damaged property on the same site with other property:

(i) Of like kind, capacity, size and quality; and

(ii) Used for the same purpose;

(d) The amount you actually spend that is necessary to repair or replace the damaged property.

\* \* \* \* \* \*

(3) We will not pay you:

(a) ...

(b) For any extra cost if you decide to repair or replace the damaged property with property of a better kind or quality or of larger capacity.

Appellant's Appendix 62.

The policy makes it clear that Allianz will pay the lesser of repairing or replacing the property. If the insured decides to replace the property with property of a better kind or quality or of a larger capacity, Allianz will not pay for the extra cost. This provision suggests that Allianz at least anticipates such an occurrence. Although Allianz will not pay the extra cost in such a situation, it is in no way released from its obligation to pay what it otherwise would be required to pay had the insured not upgraded the property. In the case before us, had Georgia–Pacific not chosen to upgrade its dryer, Allianz would have had to pay all of the costs associated with repairing Dryer No. 7, including removing Dryer No. 6 and reinstalling Dryer No. 7. Allianz also argues that Georgia–Pacific never intended to replace Dryer No. 6 with Dryer No. 7 or any other dryer, but intended No. 6 to function as a permanent replacement. Therefore, reinstallation of Dryer No. 7 never would have occurred. The jury rejected this argument, and its finding is sufficiently supported in the record.

This situation is analogous to that of wrecking a car. If you wreck your car, you may choose to repair it, replace it, or do neither. The insurer, on the other hand, is generally obligated to pay you either the cost to repair the car or the car's value, whichever is less. The fact that you decide to replace the car or to ride the bus and do nothing to the car in no way changes the insurer's duty to pay you. Similarly, in this case, Allianz must pay the cost of repairing and reinstalling Dryer No. 7 even though Georgia–Pacific has chosen instead to replace it.

II.

Allianz next argues that the $57,000 cost to expedite the repairs for Dryer No. 7 is not recoverable, because the expense was never incurred. The policy provides that Allianz will pay "the reasonable extra cost to ... expedite permanent repairs...." Uncontradicted testimony at trial indicated that, had Dryer No. 7 been repaired, it would have been more economical to expedite the manufacturing of the head. Allianz does not dispute this, but argues that since no new head was actually manufactured, Georgia–Pacific never paid extra to expedite anything. Therefore, Allianz reasons, it has no duty to cover such an expense.

462

Once again, the amount recoverable is not the amount spent. Otherwise, the judgment would be significantly greater to account for the new larger-capacity dryer the insured actually purchased to replace Dryer No. 7. The amount recoverable is determined from the policy language. The policy provides that Allianz will pay the cost to replace the property, repair the property, or the amount the insured actually spends to repair or replace it, whichever is less. If the jury had found that Dryer No. 6 was meant to be a permanent, rather than a temporary, replacement, then the amount the insured spent to replace the property (with Dryer No. 6) would be the smallest amount. Consequently, Allianz would not have been obligated to pay the expediting expense or, for that matter, any of the other costs it disputes. The jury did not find that Dryer No. 6 was intended to be a permanent replacement, however. Thus, the entire cost of repairing Dryer No. 7, the least expensive option, including the cost to expedite the manufacturing that would have been necessary to accomplish the repair, is recoverable.

### III.

■ Finally, Allianz argues that the award representing the estimated business-interruption loss that will be sustained when Dryer No. 6 is replaced is not recoverable because it is not an "actual loss sustained." The business-interruption part of the policy provides that Allianz will pay the following costs:

a. Your "actual loss" from a total or partial interruption of business; and

b. The reasonable extra expense incurred by you or us to reduce or avert interruption of business. The amount we pay for extra expense is limited to the extent that our payment under paragraph a. is reduced.

Appellant's Addendum 23. The policy defines actual loss as

a. The net profits you fail to earn because of business interruption resulting from an "accident"; and

b. Whatever part of the following fixed charges and expenses the business

failed to earn but would have earned if there had been no "accident"....

In calculating the "actual loss," we will take into account the actual experience of your business before the "accident" and the probable experience you would have had without the "accident".

Appellant's Addendum 24.

We note first that the disputed loss was calculated as if Georgia–Pacific had chosen to repair and reinstall Dryer No. 7, and not on the basis of the installation of the new larger dryer, which, presumably, will take more time to install. Allianz's principal argument is that Georgia–Pacific has admitted that the loss has not yet been sustained and may never be sustained. It points to the testimony of Robert Wright, Georgia–Pacific's comptroller, who admitted that if Dryer No. 6 were never replaced, no business-interruption loss would occur. Appellant's Appendix 44. This is an obvious answer to a hypothetical question. Allianz mischaracterizes this answer by calling it an admission by the insured that it may never sustain the loss. Once again, we remind Allianz that the jury believed Georgia–Pacific's claim that it intended Dryer No. 6 to be a temporary replacement. The question then is not whether there will be an interruption, but what it would have cost Georgia–Pacific—in the form of a loss from business interruption—to reinstall Dryer No. 7. The jury determined that Georgia–Pacific proved it would have cost $824,100. This finding is supported by the evidence.

Allianz also claims the amount of the loss is speculative for several reasons: the insured does not know exactly how long it would have taken to remove Dryer No. 6 and replace it with Dryer No. 7, what the economy or paper market will be like when the swap occurs, or whether the plant will already be down for maintenance when the swap occurs. Since the loss has not occurred, and these factors make the amount of the loss a mere guess, Allianz argues, the loss is not an "actual loss." The jury estimated the amount of the loss on the

basis of the evidence presented. Its estimate is not unreasonable.

Allianz also cites cases for the proposition that a business-interruption loss must be actually experienced before the insured can recover. See *Metalmasters of Minneapolis, Inc. v. Liberty Mutual Ins. Co.*, 461 N.W.2d 496 (Minn.App.1990); *Royal Indemnity Co. v. Little Joe's Catfish Inn, Inc.*, 636 S.W.2d 530 (Tex.App.1982); *Berkeley Inn, Inc. v. Centennial Ins. Co.*, 282 Pa.Super. 207, 422 A.2d 1078 (1980). As the able opinion of the District Court points out, these cases all involved businesses which were not profitable and, for that reason, experienced no loss. Allianz argues that a business which has sustained no loss because it is unprofitable is equivalent under the policy to a business which has sustained no loss because there has been no interruption. We disagree. An unprofitable business cannot prove it failed or will fail to earn net profits because of a business interruption. The more likely reason it will fail to earn net profits is that it was an unprofitable business to begin with. A profitable business like Georgia–Pacific, on the other hand, can prove it will fail to earn net profits because of the interruption based on the business's "actual experience ... before the 'accident' and the probable experience [it] would have had without the 'accident.'" Appellant's Addendum 24. This is exactly the evidence Georgia–Pacific presented to the jury. We reject Allianz's argument that to be an "actual loss" covered by the policy, the loss must have already been experienced. The business-interruption loss here will never be experienced since it is based on an event—reinstallation of Dryer No. 7—that will never occur. But Georgia–Pacific did prove that $824,100 was a reasonable estimate of the loss that would have been sustained if it had chosen the least expensive option available to it under the policy.

We have upheld the District Court's award of damages in all respects. It follows that the award of fees and statutory penalty, which depends on the insured's recovery of 80% of the amount demanded in its amended complaint, must also be affirmed.

Affirmed.