**B A PROPERTIES, INC. Plaintiff,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, a Connecticut Stock Insurance Company, United States Fire Insurance Company, a New York Stock Insurance Company, and Zurich Insurance Company, a foreign stock corporation, Defendants.**

No. CIV.1997/0006.

District Court, Virgin Islands,
D. St. Thomas and St. John.

July 25, 2003.

David M. Roberts, Roberts, Raste & Blanton, LLP, Los Angeles, CA, Richard R. Knoepfel, Dudley Clark & Chan, St. Thomas, VI, for Plaintiff.

John A. Sopuch, III, Moore & Sopuch, P.C., Christiansted, VI, H. Stuart Kinder, Rudloff, Wood & Barrows, Emeryville, CA, for Defendants.

### MEMORANDUM OPINION

FINCH, Chief Judge.

THIS MATTER comes before the Court on Defendants' Motion for Partial Summary Judgment and Plaintiff's Motion for Summary Judgment, or/in the Alternative for Summary Adjudication of Issues.

## I. BACKGROUND

Plaintiff B A Properties, Inc. [hereinafter "B A Properties"], owned the hotel in St. Thomas, Virgin Islands, now known as the Ritz–Carlton [hereinafter "the Hotel"], when Hurricane Marilyn struck in September 1995. Hurricane Marilyn caused severe damage to the Hotel, including extensive damage to the roof, the landscaping, and the Hotel buildings. The damage was so severe that B A Properties shut down the Hotel following the hurricane.

Before Hurricane Marilyn, in March 1995, Defendants Aetna Casualty & Surety Company, United States Fire Insurance Company, and Zurich Insurance Company [hereinafter, collectively, "the insurers"] jointly issued a master insurance policy [hereinafter "the Policy"][1] covering 81 properties owned by B A Properties and its related companies. Of the 81 properties, 58 were located in California, and the others were scattered across the United States, with the Hotel being the only property in the Virgin Islands.

In March 1996, B A Properties filed a claim with the insurers for the damage to the Hotel and for the losses it suffered due to the interruption of its business. B A Properties sold the Hotel to Marriott Corporation in June 1996. In August, 1996, the insurers notified B A Properties of the amount that they were willing to pay. The insurers rejected B A Properties' claims for certain costs associated with complying with post-Hurricane revisions to the Virgin Islands building ordinances and refused to pay for any losses resulting from business interruption after B A Properties' sale of the Hotel to Marriott Corporation.

B A Properties asks the Court to rule that the Policy covers the costs of complying with even those building ordinances that were enacted after Hurricane Marilyn and that the sale of the Hotel does not reduce its potential recovery for its business interruption losses. The insurers encourage the Court to hold that B A Properties cannot recover for losses stemming from business interruption for any time after it sold the Hotel.

## II. STANDARD FOR RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

The Court must grant a motion for summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In deciding such motion, the Court must view the facts in the light most favorable to the non-moving party, *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its]

---

1. The master insurance policy consists of three separate policies between each of the insurers and B A Properties, attached to the Declaration of Eric B. Forsberg, Vice President of B A Properties as Exhibits A, B, and C. Each of the policies is identical, except for the amounts of insurance coverage provided. For ease of reference, the Court will cite only to Exhibit A.

favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Cross-motions for summary judgment do not alter this standard. "It is well settled that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir.1976).

> The fact that both parties make motions for summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no fact issue exists. Each, in support of his own motion, may be willing to concede certain contentions of his opponent, which concession, however, is only for the purpose of the pending motion. If the motion is overruled, the concession is no longer effective

*F.A.R. Liquidating Corp. v. Brownell,* 209 F.2d 375, 380 n. 4 (3d Cir.1954) (quotation omitted); *see also Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 150 (3d Cir.1993) (holding that plaintiff did not waive issue by filing cross-motion in that plaintiff argued that there was no genuine issue of material fact for purposes of its own motion and adequately preserved its objection to granting summary judgment for defendant).

### III. WHEN THE COURT MAY INTERPRET AN INSURANCE POLICY

█ Resolution of the pending motions requires interpretation of the insurance policy. Unless the meaning of the policy's terms "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence," the legal effect of the policy is a question to be determined by the Court as a matter of law. Restatement (Second) of Contracts § 212(2). Here, the meanings of the policy's terms in question do not depend on extrinsic evidence. Thus, the Court will interpret the meaning of the policy's disputed terms as a matter of law.

### IV. THE POLICY DOES NOT COVER COSTS RELATED TO ORDINANCES ENACTED AFTER THE COVERED EVENT.

█ The Policy covers "replacement cost new... at time and place of loss... whether or not building is actually rebuilt or replaced including the increased cost occasioned by the enforcement of any ordinance." Forsberg Decl, Ex. A, PTY 11–12, ¶ 6A. The Policy's language is plain and unambiguous with regard to when the replacement cost is to be measured; it is to be measured at the time of loss, not the time of replacement. To include the costs associated with the enforcement of ordinances enacted after Hurricane Marilyn would be to interpret the Policy as determining the replacement cost at the time of replacement, rather than at the time of loss. B A Properties has not provided the Court with any justification for construing this provision contrary to its "generally prevailing meaning." Restatement (Second) of Contracts § 202(3).

B A Properties' insurance coverage does not include any cost occasioned by the enforcement of any ordinance that was not in effect when Hurricane Marilyn struck. Thus, the Court must deny B A Properties' motion for summary judgment on this issue.

### V. THE EFFECT OF THE SALE OF THE HOTEL ON B A PROPERTIES' RECOVERY OF BUSINESS INTERRUPTION LOSSES

The insurers contend that by selling the Hotel after Hurricane Marilyn, BA Prop-

erties lost its insurable interest in the Hotel's business interruption losses and therefore, cannot recover for such losses after the date of sale. The insurers argument is twofold. First, they claim that, by law, the Virgin Islands requires that the insured have an insurable interest in the subject matter and that, with respect to business interruption insurance, this interest must continue for the length of time that it would take to rebuild. Second, the insurers claim that the policy provides coverage only for the actual losses sustained during the interruption of business and that by selling the Hotel, B A Properties drew an end to its business interruption losses.

A. *Virgin Islands Law Applies in Determining the Meaning of "Insurable Interest."*

■ B A Properties encourages the Court to apply California law in determining whether its insurable interest must continue during the period of rebuilding. A California statute provides that any change in insurable interest after the loss occurs does not affect an insured's right to collect under an applicable insurance policy. Cal. Ins.Code § 301. There is no corresponding statute in the Virgin Islands addressing this question. Thus, the Court must decide whether to apply the law of the Virgin Islands or the law of California in determining whether a change in insurable interest after a loss affects an insured's rights. *See On Air Entertainment Corp. v. National Indem. Co.*, 210 F.3d 146, 149 (3d Cir.2000) (noting that before choice-of-law question arises, there must be conflict between potentially applicable bodies of law). Even if the result is the same under California or Virgin Islands law, the Court must decide which jurisdiction's body of law to apply for purposes of analytical discussion of this question. *See Shapiro v. Associated Intern. Ins. Co.*, 899 F.2d 1116, 1118 (11th Cir.1990).

Because the Court obtained jurisdiction through diversity of citizenship, it is bound to apply the substantive law of the Virgin Islands. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This principle applies to the Virgin Islands law regarding choice-of-laws. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In the Virgin Islands, choice-of-law questions are resolved by reference to the Restatement (Second) of Conflict of Laws. *See* 1 V.I.C. § 4.

■ The Court looks to section 193 of Restatement (Second) of Conflict of Laws in determining which jurisdiction's law applies when the interpretation of an insurance contract is involved and there is an understanding between the parties as to where the insured risk is located. *Cf. Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.*, 880 F.2d 685, 690 (3d Cir.1989) (relying on Restatement (Second) of Conflict of Laws § 188, because section 193 was inapplicable in that parties lacked understanding as to location of insured risk). Although Restatement (Second) of Conflict of Laws § 188 applies to choice-of-law questions regarding contracts in general, section 193 applies specifically to questions regarding insurance contracts. Therefore, it would be improper for the Court to take its guidance from section 188 in resolving which jurisdiction's law applies in this case. *See Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1315 (3d Cir.1978) (holding that Restatement (Second) of Conflicts of Law § 192, specifically relating to life insurance contracts applied, rather than general section 188); *Celebre v. Windsor–Mount Joy Mut. Ins. Co.*, 1994 WL 13840, *3 (E.D.Pa., Jan.14, 1994) (relying on *Melville* in finding that section 193 applied, rather than section 188); *cf. NL Industries, Inc. v. Commercial Union Ins. Co.*, 154 F.3d 155,

157–58 (3d Cir.1998) (referring to section 193, without mention of section 188 in resolving choice-of-law question regarding interpretation of insurance contract concerning sites in multiple jurisdictions); *General Ceramics, Inc. v. Firemen's Fund Ins. Companies,* 66 F.3d 647, 655 (3d Cir. 1995) (applying section 193 even though district court had relied in part on section 188). *But see NL Industries, Inc. v. Commercial Union Ins. Co.,* 65 F.3d 314, 320 (3d Cir.1995) (relying primarily on section 188 to resolve choice-of-law question involving interpretation of insurance contract, but taking guidance from section 193 in applying section 188).

 Under section 193, the most important factor is the location of the insured property:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 193. However, when, as in this case, the insurance policy covers sites in many states the court must consider the application of the factors listed in Restatement (Second) of Conflict of Laws § 6. *Robeson Indus. Corp. v. Hartford Acc. & Indem. Co.,* 178 F.3d 160, 166 (3d Cir.1999); Restatement (Second) of Conflict of Laws § 193, cmt. b. The factors relevant to the choice of the applicable rule of law, according to section 6, are:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2)

The Third Circuit has grouped these seven factors into five categories of interests:

> The first category, consisting of factors (b) and (c), requires a court to focus on the purposes and policies behind each of the competing rules of law and the interests of each respective state in having its particular rules govern. The second category, consisting of factor (a), directs that a court, where interstate or foreign commerce is involved, consider the desirability of promoting mutually harmonious relationships between governmental entities. The third category of interests, consisting of factors (d) and (f), relates to the protection of justified expectations of the parties and to their needs for predictability of result. The fourth category of interests, consisting of factor (e), focuses on the basic policy underlying the particular field of law involved, and the fifth category, which embraces factor (g), requires the court to consider the concerns of judicial administration, such as which of the competing rules will simplify the determination and application of the applicable law.

*General Ceramics, Inc.,* 66 F.3d at 656. Thus, the Court's analysis must consider each category: (1) the interests of the

relevant states, (2) the interests of commerce, (3) the interests of the parties, (4) the interests underlying the contract law, and (5) the interest of judicial administration. *See id.*

### (1) The Interests of the Relevant States

California's statute regarding the effect of a change on an insured's interest in property subsequent to a covered occurrence, reflects California's legislative policy of protecting California insureds. The Virgin Islands does not have a comparable statute. Thus, California has expressed a stronger interest than the Virgin Islands in ensuring that a California insured, such as B A Properties which has its principal place of business in California, is able to recover under an insurance policy even after transferring its insurable interest after a loss.

### (2) The Interests of Commerce

■ Interstate commerce would be disrupted by applying California law to a question involving the effect that a transfer of an interest in real property would have in the Virgin Islands. The law of the situs is generally applied in determining issues involving real property. *See* Restatement (Second) of Conflict of Laws §§ 222–243. Each state and territory has a strong expectation that its law will be applied to questions involving interests in real property lying within its jurisdictional boundaries. A choice-of-law rule that would apply another jurisdiction's law to the effect of a change in an interest in real property would contradict established norms. Thus, the consideration of this category weighs heavily in favor of applying the law of the Virgin Islands.

### (3) The Interests of the Parties

The parties should have anticipated that since the insured interest is in the Virgin Islands, suit might be brought in the Virgin Islands and the law of the Virgin Islands might be applied. Virgin Islands' law prevented the parties from including a forum selection clause in the insurance contract specifying that the case be brought in a jurisdiction under the Virgin Islands or from including a choice-of-law provision, specifying that a jurisdiction's law, other than that of the Virgin Islands, be applied. 22 V.I.C. § 820. The courts of the Virgin Islands are known to apply the choice-of-law rules as set forth in the Restatement (Second) of Conflict of Laws. *See* 1 V.I.C. § 4. Section 193 of the Restatement (Second) of Conflict of Laws provides that the law of the situs will apply unless some state has a more significant relationship. The parties should have realized then, that it would be unusual for the law of a jurisdiction other than the Virgin Islands to apply when the insured interest relates to property which is located in the Virgin Islands. Thus, the parties' justified expectations would be met by applying the law of the Virgin Islands.

### (4) The Interests Underlying Insurance Law

California and the Virgin Islands both apply the ordinary rules of contractual interpretation in resolving questions involving the meaning of terms in insurance contracts. *Compare Foster–Gardner, Inc. v. National Union Fire Ins. Co.,* 18 Cal.4th 857, 77 Cal.Rptr.2d 107, 959 P.2d 265, 272 (1998) *with Coakley Bay Condominium Ass'n v. Continental Ins. Co.,* 770 F.Supp. 1046, 1050 (D.Vi.1991). Thus, consideration of the interests underlying the applicable body of law do not tip the scale in either direction.

### (5) The Interest of Judicial Administration

Finally, judicial administration of the choice-of-law rules is eased by applying the law of the situs in resolving issues

relating to insurance contracts and issues relating to the effect of changes in interests in real property. This last category, while it may be less important than other categories, *General Ceramics Inc.*, 66 F.3d at 658–659, also favors application of Virgin Islands law.

This completes the Court's review of the seven factors relevant to the choice of the applicable rule of law set forth in section 6 of the Restatement (Second) of Conflict of Laws, as further grouped into five categories by the Third Circuit in *General Ceramics, Inc.*, 66 F.3d at 656. The Court finds that, although California has manifested a strong interest in protecting the rights of its insureds, to apply the law of California to a question involving insured interests in real property located in the Virgin Islands would disrupt interstate commerce, would run counter to the justified expectations of the parties, and would complicate judicial administration of the choice-of-law rules.

Thus, the Court concludes that California does not have a more significant relationship under the principles stated in section 6. Therefore, pursuant to section 193, the Court will apply the law of the Virgin Islands, the jurisdiction in which the insured risk lies, in deciding the effect of B A Properties' change in its insurable interest in the Hotel on its right to recover under the Policy.

### B. *"Insurable Interest" is Determined at the Time of Loss*

Under the law of the Virgin Islands, only one who has an "insurable interest" may enforce an insurance contract. 22 V.I.C. § 804(a). An "insurable interest" is defined as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."[2] 22 V.I.C. § 804(b). The insurers encourage the Court to interpret this statute as requiring that an insured maintain an insurable interest during the entire period it would have taken to rebuild the property to recover fully for its business interruption losses. B A Properties responds that the statute should be construed as meaning that so long as an insured had an insurable interest when the covered event occurred, the insurers must compensate the insured for its total business interruption losses.

Many jurisdictions require by statute that the insured have an insurable interest at the time of loss.[3] However, the statutes of Louisiana, La.Rev.Stat. Ann. § 22:614, New York, N.Y. Ins. § 3401, Virginia, Va Code Ann. § 38.2–303, and Washington, Wash. Rev.Code § 48.18.040, all of which are identical to that of the Virgin Islands, do not specify a time element. Notwithstanding lack of reference to the time at which the insured must have an insurable interest, each of these states requires that the insured have an insurable interest at

**2.** Title 22 V.I.C. § 804 provides, in its entirety:

 (a) No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.

 (b) "Insurable interest" as used in this section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance

free from loss, destruction or pecuniary damage.

**3.** *See, e.g.,* Ala.Code § 27–14–4; Alaska Stat. § 21.42.030; Ark.Code Ann. § 23–79–104; Del.Code Ann. tit. 18 § 2706; Fla. Stat. ch. 627.405; Ga.Code Ann. § 33–24–4; Idaho Code § 41–1806; Ky.Rev.Stat. Ann. § 304.14–060; Me.Rev.Stat. Ann. tit. 24–A § 2406; Md.Code Ann. Ins. § 12–301; Mont. Code Ann. § 33–15–205; Nev.Rev.Stat. § 687B.060; N.M. Stat. Ann. § 59A–18–6.

the time of loss. *Rube v. Pacific Ins. Co. of N. Y.*, 131 So.2d 240, 243 (La.Ct.App. 1961); *Travelers Ins. Co. v. Providence Washington Ins. Group*, 142 A.D.2d 968, 530 N.Y.S.2d 390, 390 (N.Y.App.Div.1988); *Home Ins. Co. of New York v. Dalis*, 206 Va. 71, 141 S.E.2d 721, 724 (1965); *Gossett v. Farmers Ins. Co. of Washington*, 133 Wash.2d 954, 948 P.2d 1264, 1271 (Wa. 1997).

The Court of Appeal of Louisiana explained the legislative intent in requiring that the insured have an insurable interest at the time of loss:

> "Insurable interest" as thus defined by our state legislature is consistent with the universally recognized rule to the effect a policy of insurance on property is predominately a contract of indemnity the purpose of which is to protect the assured against any loss he may sustain by virtue of its loss, damage or destruction. The great weight of authority further recognizes and holds that an interest in the property protected is essential to the existence of a valid insuring agreement and additionally serves to differentiate an enforceable indemnity agreement from a wagering pact which latter transaction is invalid and unenforceable for reasons obviously prompted by public policy and good morals. It is also generally recognized and held the interest of the insured sought to be protected must have for its object the obviation of pecuniary or financial loss to or liability of the assured which would otherwise result from damage to or destruction of the insured property. If the loss or damage to the insured property does not expose the insured to either direct, immediate or potential loss or liability, the insured is without insurable interest therein.

*Rube v. Pacific Ins. Co.*, 131 So.2d at 243. The Court assumes that the Legislature of the Virgin Islands enacted its identical statute for much the same reasons.

Indeed, the jurisdictions that define insurable interest as it is defined in the Virgin Islands not only require that the insured have an insurable interest at the time of loss, but also consider that the right and amount of recovery is fixed at the time of loss. *Cf.* 12 Couch on Ins. § 178:66 ("The rights of the parties to the insurance contract are determined as of the time or moment the loss is sustained."). Even if an insured had an insurable interest at the time that the policy was purchased, the insurer is not liable under the policy if the insured transferred the insurable interest before the covered occurrence. *See, e.g., Eagle Star Ins. Co., Ltd. v. General Acc. Fire & Life Assur. Corp.*, 315 So.2d 826, 830 (La.App.1975); *Barth v. Allstate Ins. Co.*, 95 Wash.App. 552, 977 P.2d 6, 8–9 (1999). Conversely, if the insured's interest had not yet vested at the time of the covered occurrence, the insurer cannot be held liable. *Gossett*, 948 P.2d at 1271; 12 Couch on Ins. § 178.66. Most pertinent to this case, if the interest is divested after the covered occurrence, the insurer is still required to pay under the terms of the policy. *See, e.g., Ruby S.S. Corp. v. American Merchant Marine Ins. Co.*, 224 A.D. 531, 231 N.Y.S. 503, 512 (N.Y.App.Div.1928); *Aetna Ins. Co. v. Aston*, 123 Va. 327, 96 S.E. 772, 775 (1918); *Gattavara v. General Ins. Co. of America*, 166 Wash. 691, 8 P.2d 421, 423 (1932); cf. *Allstate Ins. Co. v. McGee*, 157 Ga.App. 53, 276 S.E.2d 108, 110 (1981); 3 Couch on Ins. § 41:15 ("Since the right to indemnity accrues as of the time of the loss, the fact that insured thereafter parts with his or her interest or assigns the policy does not defeat recovery.").

After reviewing the manner in which other jurisdictions have applied identically worded statutes, and considering insurance

law in general, the Court interprets 22 V.I.C. § 804 as meaning that an insurance contract arising from an interest in property is unenforceable unless the insured had an insurable interest at the time of loss, that the rights of the parties are determined as of the time of loss, and that any change in the insurable interest after the time of loss does not affect the amount that the insured can recover under the applicable insurance policy. The Court concludes that because B A Properties had an insurable interest in the business income of the Hotel when Hurricane Marilyn struck, it is not statutorily barred from recovering for its business interruption losses for the time period after it sold the Hotel.

### C. *B A Properties Sale of the Hotel Does Not Reduce its Potential Recovery.*

The Policy in this case contains the typical restriction that the insured can only recover for

> ACTUAL LOSS SUSTAINED by the Insured, including ordinary payroll, consisting of the net profit which is thereby prevented from being earned, fees, penalties, and all charges and other expenses only to the extent that they continue during the interruption of the business, and only to the extent to which they would have been earned had no loss occurred.

Forsberg Decl., Ex. A, PTY 2, ¶ 1. The insurers argue that the phrase "actual loss sustained," joined with the phrases "only to the extent that they continue during the interruption of the business" and "only to the extent to which they would have been earned had no loss occurred" imply that B A Properties cannot recover for any business interruption losses for the time period after it sold the Hotel. According to the insurers, B A Properties did not sustain any actual losses after it sold the Hotel

and its expenses and profits could not have continued after it sold the Hotel.

■ The term "actual loss sustained" does not mean that an actual loss must be experienced. *Georgia–Pacific Corp. v. Allianz Ins. Co.*, 977 F.2d 459, 463 (8th Cir. 1992). "A profitable business ... can prove it will fail to earn net profits because of the interruption based on the business's actual experience before the accident and the probable experience it would have had without the accident." *Id.* (quotation omitted). The Policy clearly states that the actual loss can be determined with "due consideration given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred." Policy, PTY–5, ¶ (3). Thus, the "actual loss sustained" limitation means only that an actual loss must be predictable from past business experience. The further restriction that only those expenses that continue during the business interruption are covered means that the Policy covers only expenses that the insured would have been able to pay had it continued in operation. *See Hampton Foods, Inc. v. Aetna Cas. and Sur. Co.*, 787 F.2d 349, 354 (8th Cir. 1986). To construe this restriction as requiring that B A Properties continue to own the Hotel to be able to recover its continuing expenses would be to stretch it beyond its common meaning.

■ The insurers contend that B A Properties' loss was reduced by the sale of the Hotel and that the amount B A Properties can recover from them should be reduced accordingly. In *Dubin Paper Co. v. Insurance Co. of North Am.*, 361 Pa. 68, 63 A.2d 85 (1949), the insurer made the similar argument that the insured did not suffer a complete loss, because notwithstanding the fire that partially destroyed the insured premises, Dubin Paper Company was able to collect money from the

sale of the premises. The Supreme Court of Pennsylvania explained:

> The error in this argument is in the defendants' interpretation of the word "loss". They give that word too wide a meaning. A contract of fire insurance, in simple language, means this: For the premium paid by the insured, the insurer will, in case the insured's building is destroyed by fire, indemnify him to the extent that he can show that his wealth has been depleted by that fire. In other words, the insurance company gives the insured the equivalent in money of the building lost by fire. The 'loss' which the insurance company contracted to pay to the owner of the building in the event of its destruction by fire is the actual worth in money of that building before it was destroyed.

*Id.* at 92.

■ Here, the loss that the insurers contracted to pay is the loss in business income. Although the loss in business income must be measured in money, the insured does not have to prove a loss of money to recover, but a loss of net profits from the business based on past experience. Like the insurer in *Dubin Paper Co.* which owed the insured the equivalent in money of the building lost by fire, the insurers must give B A Properties the equivalent in money of its business interruption losses. From this, it follows that any receipt by B A Properties of money from any other source, does not reduce the actual loss that B A Properties sustained as a result of Hurricane Marilyn for which the insurers must compensate it. *See Milwaukee Mechanics Ins. Co. v. Maples,* 37 Ala.App. 74, 66 So.2d 159, 167 (1953) (insurer's liability to pay insured actual cash value as provided in policy not diminished by fact that seller realized all but $1,000 of agreed contract price in sale after fire).

The court in *Dubin Paper Co.* further illustrated this principle through the following examples:

> Suppose that after a building is destroyed by fire a benevolent relative hears of the insured's loss and, not knowing or caring whether the building was insured, sends the insured a check for $10,000 as a solace to him, would the insurance company be permitted in its settlement with the insured to deduct the $10,000 which was given to him by his relative as a result of the loss? The only logical answer to that question is "No". The insurance company would have no right to appropriate to itself any part of the windfall to the insured. Suppose that after the building was destroyed by fire there was found in the ruins, in a heat resistant container which, unknown to anyone had been concealed under one of the floors of the destroyed building, the sum of $10,000. That would belong to the insured unless some other person could establish a superior claim to it. The insurance company would have no valid claim on that windfall. The destruction of a building by fire may conceivably bring many benefits to the owner and whatever these may be, the insurance company cannot participate in them.

*Dubin Paper Co.,* 63 A.2d at 92–93 (footnote omitted). Thus, even if B A Properties benefitted by the sale of the Hotel, the insurers cannot escape their own liability by claiming that benefit as their own:

> That the occurrence of the loss may either, because of the existence of collateral contracts, or because of the abandonment of such contracts, indirectly give to the insured an advantage, does not concern the insurer. He does no more than indemnify the insured according to his policy if he pays no more than the value of the property destroyed, the

sum insured upon it and the interest of the insured at the time of the loss. That the damage from a fire was repaired by a third party without any expense to an insured or that a purchaser paid for a parcel of real estate after a house thereon was damaged by fire the same price he agreed to pay before the fire does not diminish the liability of the insurer to pay for the value of the property destroyed or damaged.

*New England Gas & Elec. Ass'n v. Ocean Acc. & Guarantee Corp.,* 330 Mass. 640, 116 N.E.2d 671, 682–683 (1953) (quotation and citations omitted). Thus, the insurers cannot claim any money collected by B A Properties when it sold the Hotel to the Marriott Corporation as an offset against the money that they owe B A Properties for the actual business interruption losses that B A Properties sustained.

Under the terms of the Policy, business interruption losses are calculated based on a period which "shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property as has been destroyed or damaged including any additional time required to comply with laws and ordinances." Forsberg Decl., Ex. A, PTY 4, ¶ 1(a). This period is standard; it "runs concurrently with an interruption due to an insured peril and lasts until the damaged property is restored." *See Pennbarr Corp. v. Insurance Co. of North America,* 976 F.2d 145, 154 (3d Cir.1992).

The Policy does not require the insured to rebuild or to resume business operations to be compensated for its business interruption losses. Nor is there a provision shortening the length of time for which the insured can recover for the interruption of its business in the event that the insurable interest is conveyed to a third party. If the insurers intended to provide B A Properties with "a business interruption policy with an indemnity period distinct from that of a 'standard' business interruption policy, the final product should have included clear language evincing as much." *See id.*

Finally, to limit B A Properties indemnity period to the date of sale of the Hotel would shortchange B A Properties, if the Hotel could not have been restored by that date. "[T]he purpose of business interruption insurance [is] to return to the insured that amount of profit that would have been earned during the period of interruption had a casualty not occurred." *Id.* If B A Properties' recovery is reduced because it sold the Hotel during the period of interruption, it would defeat the very purpose for which B A Properties purchased business interruption insurance. An interpretation of the Policy that would negate its primary purpose is not preferred. *See* Restatement (Second) of Contracts § 203.

## VI. CONCLUSION

 The Policy does not require that the insurers pay for any costs associated with the enforcement of any ordinances that came into effect after Hurricane Marilyn. B A Properties' potential recovery for its losses resulting from the interruption to its business caused by Hurricane Marilyn is not reduced by its sale of the Hotel. There remains a genuine issue of material fact as to the length of time for which B A Properties can recover for the interruption of its business.

### *ORDER*

THIS MATTER comes before the Court on Defendants' Motion for Partial Summary Judgment and Plaintiff's Motion for Summary Judgment, or/in the Alternative for Summary Adjudication of Issues. For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED**

(1) that Plaintiff's Motion for Summary Judgment is **DENIED** with respect to Defendants' obligation to compensate it for any costs associated with the enforcement of any ordinances enacted after Hurricane Marilyn;

(2) that Defendants are obligated to compensate Plaintiff for its business interruption losses without any reduction due to the sale of its insurable interest; and

(3) that because there is a genuine issue of material fact concerning the length of time that the Plaintiff can recover for interruption of its business, Plaintiff's and Defendants' Motions for Summary Judgment as to the amount of business interruption losses are **DENIED**.

### *ORDER*

THIS MATTER came before the Honorable Thomas K. Moore on Defendants' Motion for Partial Summary Judgment and Plaintiff's Motion for Summary Judgment, or/in the Alternative for Summary Adjudication of Issues. Judge Moore entered a Memorandum Opinion and Order on such Motions. Subsequent to the entry of the Memorandum Opinion and Order, Judge Moore recused himself from this case. He then entered an Order that vacated his Order on such Motions, but did not refer to the Memorandum Opinion. The case has now been transferred to the undersigned.

After consultation with Judge Moore and with his consent, it is hereby

**ORDERED** that the Memorandum Opinion, dated April 24, 2002, is **VACATED**.