Garni, J.
(dissenting). I respectfully dissent and would deny the motion of CH Insurance Brokerage Services, Co., Inc. (defendant) for summary judgment dismissing the amended complaint against it. At the outset, I note that I concur with my colleagues that “defendant’s own submission supports the contention that [Deborah Voss (plaintiff)] relied upon defendant’s expertise and assurance regarding the appropriate level of insurance to protect the corporate plaintiffs in the event of a loss.” Thus, I further concur with my colleagues that defendant failed to establish its entitlement to judgment dismissing the amended complaint on the ground that no special relationship existed between defendant and plaintiffs (see generally Murphy v Kuhn, 90 NY2d 266, 271 [1997]). However, it is at this juncture that the majority and I part ways.
Given my agreement with the majority that plaintiffs’ assertion of a “special relationship” with defendant remains viable, it thus follows that plaintiffs may be found to have relied upon defendant’s expertise and assurance regarding the appropriate level of insurance to protect the corporate plaintiffs in the event of a loss. It is therefore incongruous to conclude, simultaneously, as does the majority, that the cause of action against defendant for negligence and breach of contract is defeated as a matter of law because the renewed policy was in effect for approximately nine months at the time of the third loss, and “[p]laintiff[s are] charged with conclusive presumptive knowledge of the terms and limits of [the policy]” (Hoffend & Sons, Inc. v Rose & Kiernan, Inc., 19 AD3d 1056, 1057 [2005] [internal quotation marks omitted], affd on other grounds 7 NY3d 152 [2006]). Rather, if plaintiffs in fact relied upon defendant’s expertise and assurance regarding the appropriate level of insurance coverage, “it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy” (Baseball Off. of Commr. v Marsh & McLennan, 295 AD2d 73, 82 [2002]; see Hersch v DeWitt Stern Group, Inc., 43 AD3d 644, 645 [2007]). Indeed, the doctrine that an insured is presumed to know the terms and limits of the policy has its genesis in actions against insurers — not agents with whom a special relationship with the insured has been alleged or established (see Metzger v Aetna Ins. Co., 227 NY 411, 414-417 [1920]).
I also respectfully disagree with the majority’s conclusion concerning the dispositive effect of the testimony of plaintiff that, if the $75,000 policy limits had been paid in a timely manner after the first two incidents, the plaintiff corporations would have remained operational. The policy at issue provided “BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE.” *1546 Under the policy, the insured’s “Business Income loss” is determined by the net income of the business before the direct physical loss or damage occurred. The policy covers business income loss sustained due to the necessary suspension of “operations” during the “period of restoration” caused by the physical loss to the business property.
However, the policy clearly contemplates the possibility that the insured might not resume “operations” after the loss. Specifically, the policy provides, “If you do not resume ‘operations,’ or do not resume ‘operations’ as quickly as possible, we will pay based on the length of time it would have taken to resume ‘operations’ as quickly as possible.” Thus, neither the policy nor the benefits paid thereunder guarantee or insure that the insured business will once again become operational, profitable or sustainable. Instead, the policy insures against losing net business income and incurring extra expenses during the period when “operations” are suspended or during a reasonable time in which to “resume operations” (see generally Buffalo El. Co. v Prussian Natl. Ins. Co., 64 App Div 182, 185-187 [1901], affd 171 NY 25 [1902]). If and when the business resumes operations, the insurer’s obligation to pay net income benefits terminates (see Royal Indem. Co. v Retail Brand Alliance, Inc., 33 AD3d 392, 393 [2006], lv denied 8 NY3d 813 [2007], 11 NY3d 705 [2008]). However, if the business does not resume operations, the insured is entitled to business interruption coverage for the period of time it would have reasonably taken to resume operations (see Children’s Place Retail Stores, Inc. v Federal Ins. Co., 37 AD3d 243 [2007]), and the duration of that time period ordinarily constitutes an issue of fact (see Maple Leaf Motor Lodge v Allstate Ins. Co., 53 AD2d 1045, 1046 [1976]). Thus, an insured may receive payment of policy benefits for business interruption coverage and never resume operations without violating the terms and conditions of the policy (see DiLeo v United States Fid. & Guar. Co., 109 Ill App 2d 28, 42-43, 248 NE2d 669, 676 [1969]; see also National Union Fire Ins. Co. v Scandia of Hialeah, Inc., 414 So 2d 533, 535 [1982]). There is no requirement in the policy that the insured must resume operations in order to recover business interruption losses (see B A Props., Inc. v Aetna Cas. & Sur. Co., 273 F Supp 2d 673, 685 [2003]). Indeed, the claims analyst for the insurer testified at his deposition that business income loss payments made to an insured could be spent “on anything.”
Plaintiffs’ action against defendant arises from the failure to procure business interruption coverage limits in an amount consistent with the nature of the business, and its revenue, *1547 expense and net income performance history. Whether defendant was negligent in failing to do so is measured not by whether plaintiffs would have resumed operations if timely paid the full but allegedly insufficient limits after each of the first two incidents. Instead, it is measured by the amount of plaintiffs’ business income losses when compared to the policy limits determined and procured by defendant. Thus, I conclude that whether plaintiffs actually resumed operations is irrelevant to the proximate cause analysis. As the movant seeking summary judgment dismissing the amended complaint, defendant had to establish that the policy limits were sufficient to cover the amount of plaintiffs’ business income losses during the relevant policy periods (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Defendant did not meet that burden and thus is not entitled to summary judgment.
Moreover, in my view the record is confusing and inconclusive with respect to the amount of plaintiffs’ business interruption losses for each incident. However, the record does reflect that, with respect to the second incident, plaintiffs’ claimed business income loss was the sum of $449,724. Obviously, the disparity between that loss and the $75,000 policy limit would provide the necessary proximate cause for an award of damages with respect to the second incident in the event that plaintiffs were successful in convincing the trier of fact that the aforementioned “special relationship” existed and that defendant was negligent. Present — Scudder, P.J., Smith, Carni and Sconiers, JJ.