PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-4602/08-1996
_____

DEVCON INTERNATIONAL CORPORATION;
V.I. CEMENT & BUILDING PRODUCTS, INC.
d/b/a MARK 21 INDUSTRIES, INC.,
d/b/a CONTROLLED CONCRETE PRODUCTS, INC.,
d/b/a SPRINGFIELD CRUSHER,

Appellants,

v.

RELIANCE INSURANCE COMPANY;
VIRGIN ISLANDS INSURANCE GUARANTY
ASSOCIATION,

Appellees.

_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 01-cv-201)
District Judge: Curtis V. Gomez

_____

Submitted Under Third Circuit LAR 34.1(a)
May 6, 2010

Before:  SMITH, CHAGARES and JORDAN, *Circuit Judges*.

(Filed:  June 8, 2010)

_____

Jack J. Aiello
Gunster, Yoakley & Stewart
777 S. Flagler Drive
East Tower, Suite 500
West Palm Beach, FL   33401

James L. Hymes, III
Law offices of James L. Hymes, III
5065 Norre Gade - #3
P.O. Box 990
St. Thomas, VI   00804
        *Counsel for Appellants*

Richard H. Hunter
Hunter, Cole & Bennett
1138 King Street - #301
Christiansted, St. Croix
USVI   00820
        *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

2

JORDAN, *Circuit Judge*.

Devcon International Corporation ("Devcon") appeals an order of the District Court of the Virgin Islands of the United States entering a declaratory judgment in favor of Reliance Insurance Company ("Reliance") on Devcon's claim that Reliance is required to defend and indemnify Devcon in a nuisance action brought against it in the Superior Court of the Virgin Islands ("the underlying action"). For the reasons that follow, we will affirm.

## I.  Factual Background

This case arises from an alleged nuisance caused by Virgin Islands Cement ("V.I. Cement"), a subsidiary of Devcon, at the Henry E. Rohlsen Airport ("the airport") on the island of St. Croix, Virgin Islands.

### A.  *Facts Alleged In The Underlying Complaint*

In September 1999, the Virgin Islands Port Authority ("VIPA"), which operates the airport, retained V.I. Cement to act as general contractor on a project to extend the airport's sole runway. Construction began the following month and generated large quantities of dust, which drifted over property belonging to the plaintiffs in the underlying action, all of whom live near the airport. The dust allegedly contaminated the plaintiffs' drinking water and cisterns and caused breathing disorders and other unspecified physical, emotional, and psychological damage. The plaintiffs also alleged that emissions from construction vehicles were causing similar problems, and that

construction noise from the project deprived them of the quiet enjoyment of their properties.

In the spring of 2000, one of the plaintiffs filed a formal complaint with the Virgin Islands Department of Planning and Natural Resources ("DPNR"). DPNR investigators conducted an examination of the site and ordered VIPA to undertake immediate dust control measures and to submit a written plan for the relocation of residents during construction. On March 31, 2000, the DPNR issued a supplemental order that required VIPA to provide residents with uncontaminated potable water. On June 7, 2000, it rescinded its prior requirement that VIPA draft a plan for relocating residents, but it imposed additional dust remediation obligations. According to plaintiffs, neither VIPA nor its general contractor, V.I. Cement, ever fully remediated the dust problem, which continued despite the DPNR orders.

Plaintiffs filed the underlying suit on April 6, 2001, advancing various nuisance-related claims. The plaintiffs amended their complaint several times, the final version of which sets forth claims against V.I. Cement for nuisance, breach of the DPNR orders, trespass, negligence, and negligent and intentional infliction of emotional distress.

> B. *The Pollution Exclusion And Proceedings In The District Court*

V.I. Cement, acting through its parent company, Devcon, tendered defense of the plaintiffs' claims to Reliance, which had issued a commercial general liability policy to Devcon.

Reliance initially informed Devcon that "it is questionable whether the insurance policy provides coverage for any of [plaintiffs'] claims" because the policy excluded coverage for injuries resulting from pollution caused by V.I. Cement. (App. at 689.) However, Reliance later agreed to defend Devcon pursuant to a reservation of rights letter under which Reliance asserted "the right to withdraw from the matter at any future date" if Reliance discovered that the plaintiffs' injuries were outside the scope of the insurance policy. (*Id*.) Devcon then commenced the instant declaratory judgment action to ascertain Reliance's obligation to defend and indemnify it under the policy.

The Reliance policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage ... . The bodily injury or property damages must be caused by an occurrence." (*Id.* at 898.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 911.)

The policy also contains numerous exclusions that excise coverage for specific harms caused by the insured. In particular, the policy removes coverage for any "bodily injury and property damage which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time" (hereinafter "the pollution exclusion"). (*Id.* at 892.) "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." (*Id.*)

5

The parties filed cross-motions for summary judgment in the District Court. The Court found that the pollution exclusion removed coverage for the plaintiffs' injuries and that Devcon had no reasonable expectation of coverage for such harms because they were beyond the scope of coverage. Accordingly, the Court entered a declaratory judgment in favor of Reliance, finding that it had no duty to defend or indemnify Devcon for the injuries allegedly caused by V.I. Cement. Devcon filed this timely appeal.

## II.   Discussion[1]

On appeal, Devcon argues that the scope of the pollution exclusion is ambiguous and that we must construe it to provide coverage for the harms in the underlying action. Alternatively, Devcon suggests that it reasonably believed that the insurance policy would provide coverage for construction-related harms such as those caused by dust and engine fumes, and it urges us to extend coverage under the doctrine of reasonable expectations. We address each of those arguments in turn.[2]

---

[1]

The District Court had jurisdiction over Devcon's suit pursuant to 48 U.S.C. § 1612(a) and 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294.

[2]Devcon also argues that the general liability policy covers plaintiffs' claims for nuisance caused by construction noise even if the pollution exclusion removes coverage for their other harms. It further argues that plaintiffs' alleged injuries are

A.      *The Pollution Exclusion*

To establish insurance coverage, the insured bears the initial burden of showing that the harm described in the plaintiff's complaint potentially falls within the scope of the policy. *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009). "If the complaint avers facts that might support recovery under the policy, coverage is triggered

---

covered by its automotive insurance, personal injury, and work site pollution coverage. The latter form of coverage appears in an endorsement to the policy and insures against pollution-related losses provided that the discharge of pollutants lasts no longer than seventy-two hours. Reliance argues that Devcon waived its right to assert coverage under these policies because it neglected to raise them before the District Court. Devcon responds that it preserved the issues because it incorporated the pertinent policy provisions into the summary judgment record and because Reliance referenced those provisions in its summary judgment briefing. However, Devcon never argued those issues in its summary judgment briefs, and it therefore never provided the District Court with an opportunity to rule on those issues in the first instance. Accordingly, Devcon has waived its right to assert those coverage issues on appeal. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009) ("A fleeting reference or vague allusion to an issue will not suffice to preserve it for appeal, so 'the crucial question regarding waiver is whether defendants presented the argument with sufficient specificity to alert the district court.'" (quoting *Keenan v. City of Phila.*, 983 F.2d 459, 471 (3d Cir.1992))).

and the insurer has a duty to defend." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 241, 225-26 (3d Cir. 2005). The burden then shifts to the insurer to demonstrate that an exclusion places the particular harm outside of the policy's reach. *Estate of Mehlman*, 589 F.3d at 111. Exclusions from coverage are strictly construed against the insurer. *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206-07 (3d Cir. 2001).

In performing the foregoing analyses, the court must evaluate the terms of the policy to determine whether they are ambiguous. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir. 1994). A term is ambiguous if more than one reasonable interpretation of the term exists. *Id.* If the court finds that the policy is unambiguous, the court must give effect to the terms as stated on the face of the policy. However, if the court identifies an ambiguity in the policy, the court must resolve the ambiguity by giving effect to the interpretation of the term that is most favorable to the insured, as the non-drafting party. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004).

Reliance does not challenge Devcon's assertion that the injuries described in the underlying complaint fall within the policy's grant of coverage for bodily injury and property damage. Instead, Reliance argues that the pollution exclusion removes coverage for those harms. Devcon counters that the pollution exclusion was drafted for the purpose of excluding coverage for environmental pollution akin to the dumping of hazardous waste. According to Devcon, the exclusion is ambiguous, not because a particular term in the policy is susceptible to multiple interpretations, but because the exclusion, if read literally, would remove coverage for a large

8

number of harms that do not implicate the environmental catastrophes that the exclusion was supposedly intended to address.

We have previously addressed this type of argument in *Reliance Insurance Company v. Moessner*, 121 F.3d 895 (3d Cir. 1997). In that case, the plaintiffs were injured when a device used to cure concrete products emitted hazardous amounts of carbon monoxide into an enclosed area, causing various non-fatal injuries. *Id.* at 898 & n.1. The plaintiffs brought suit against the insured, which had purchased a general liability policy from Reliance that contained a pollution exclusion identical to the one in Devcon's policy. *Id.* at 899-900. Reliance brought a declaratory judgment action, and the insured responded with the same argument that Devcon currently makes: it argued that the pollution exclusion was ambiguous because "its terms '*suggest* that the exclusion applies only to environmental catastrophes.'" *Id.* at 900. We rejected that argument as contrary to a facial reading of the policy. Applying Pennsylvania law, we held that the exclusion "admits of no ambiguity in its exclusion of claims such as those [alleged in the underlying action]. It clearly states that the exclusion applies to the escape of pollutants 'at any time,' and contains no language limiting its scope to environmental catastrophes." *Id.* at 901.

Devcon argues that *Moessner* should not guide our decision because "Pennsylvania courts do not apply [principles

established by the Restatement (Second) of Contracts,[3]] as Virgin Islands courts do." (Appellant's Rep. Br. at 3.) That attempt to distinguish Pennsylvania law is unpersuasive because both Pennsylvania and the Virgin Islands follow the same guiding principles for the interpretation of insurance contracts. Under the law of both jurisdictions, we look first to the insurance policy and proceed no further if we find that the policy language is clear and unambiguous. *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992) ("It is settled law that if an insurance policy is susceptible of only one reasonable construction, and its terms are unambiguous, it must be construed according to its plain language."); *Loomer v. M.R.T. Flying Serv., Inc.*, 558 A.2d 103, 105 (Pa. Super. Ct. 1989) (same). When assessing ambiguity, both jurisdictions construe contractual language according to its "generally prevailing meaning." RESTATEMENT (SECOND) CONTRACTS § 202(3)(a) (1981); *see B A Props., Inc. v. Aetna Cas. & Sur. Co.*, 273 F. Supp. 2d 673, 677 (D.V.I. 2003) (applying § 202(3) of the Restatement); *Gustine Uniontown Assocs., Ltd. ex rel Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa. Super. Ct. 2006) (same). If the contract is unambiguous, neither jurisdiction's courts will inquire into evidence that is external to the insurance contract. *Treister*, 794 F. Supp. at 569; *Brosovic v. Nationwide Mut. Ins. Co.*, 841 A.2d 1071, 1074 (Pa. Super. Ct. 2004). Our rationale in *Moessner*, while not a binding interpretation of Virgin Islands law, is thus

---

[3]In the absence of controlling law, the Virgin Islands legislature has instructed that "[t]he rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply ... ." V.I. CODE ANN. tit. 1, § 4.

persuasive, and we adopt *Moessner*'s construction of the pollution exclusion.

Applying *Moessner*'s holding to the facts at hand, we agree with the District Court's grant of declaratory judgment to Reliance based on the pollution exclusion. The policy excludes coverage for injuries that result from the "release" of any "solid ... irritant or contaminant." (App. at 892.) The plaintiffs in the underlying action allege that particulate dust generated at the airport site has caused a variety of personal and property injuries, namely breathing disorders and groundwater contamination. Those injuries are directly caused by the dust's alleged tendency to irritate plaintiffs' respiratory systems and to taint the water table beneath their properties. The plain language of the exclusion places those alleged harms outside the policy's reach.[4] Likewise, the copious amounts of engine

_____

[4]Devcon asserts that we must limit the reach of the pollution exclusion because a literal reading of the exclusion "would produce nonsensical results." (Appellant's Op. Br. at 34.) For example, Devcon argues that, read literally, the exclusion would remove coverage for a slip-and-fall injury caused by a bottle of drain opener spilled in a supermarket aisle because that injury would have resulted from the release of a chemical irritant onto the floor. Whatever the merits of this argument, we need not consider them because a slip-and-fall is not analogous to the injuries that plaintiffs allege in the underlying action. In Devcon's hypothetical, the slip-and-fall was not caused by the drain opener's status as a chemical irritant or contaminant but merely by the fact that a liquid was spilled on the floor. In other words, the injury-causing liquid need not have been a pollutant. Plaintiffs' injuries, however, are a consequence of, for example, the dust's tendency to contaminate the environment and irritate the lining of their lungs. Those injuries, if proven, are a result of the dust as a pollutant of air and water. Thus, we need not

exhaust complained of are "fumes" and "gaseous" contaminants covered by the pollution exclusion. (App. at 892.) We conclude that the exclusion means what its plain language says: that the policy provides no insurance coverage when bodily injury or property damage results from airborne solids and fumes such as the dust clouds and engine exhaust complained of in the underlying action.

Devcon attempts to overcome the plain meaning of the exclusion by arguing that it must be ambiguous because some courts have limited its reach to environmental catastrophes while others have not. However, an ambiguity arises only when there are plausible, competing interpretations of a policy term. The cases which limit pollution exclusions to catastrophic releases of inherently hazardous substances do not seem to turn on policy ambiguities. Instead, they appear to treat the historical reasons for including pollution exclusions in insurance contracts like a legislative history to guide interpretation of the exclusions. Literal application of such an exclusion, their reasoning goes, gives it such broad scope that it encompasses many harms which, according to the alleged history of the provision, it was never intended to reach. *See, e.g., State v. Allstate Ins. Co.*, 201 P.3d 1147, 1020 (Cal. 2009) ("Because of the tension between the potentially broad literal meanings of these terms and their connotations in common usage, the pollution exclusion ... is ambiguous as to its exact scope of application."); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 79 (Ill. 1997) ("[W]e are troubled by what we perceive to be an overbreadth in the language of the exclusion as well as the manifestation of an ambiguity which results when the exclusion is applied to cases which have nothing to do with 'pollution' in

consider whether the exclusion is ambiguous when applied to injuries not caused by the irritating or contaminating nature of a substance.

12

the conventional, or ordinary, sense of the word."); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 682 (Ky. Ct. App. 1996) (finding that the pollution exclusion was ambiguous because "historical perspective and the continued use of environmental law terminology" signaled an intent that it apply only to environmental catastrophes); *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.*, 629 A.2d 831, 848-55, 875 (N.J. 1993) (refusing to enforce a literal reading of the pollution exclusion, in part because of evidence that the exclusion was intended to apply only to large-scale environmental disasters). Even Devcon recognizes that its argument relies not on competing interpretations of a policy term but on a perceived inequity that results from applying the exclusion's plain meaning. (*See* Appellant's Op. Br. at 34 ("So many courts find the pollution exclusion to be ambiguous because a literal reading of the exclusion would produce nonsensical results.").)

The trouble with Devcon's approach is that, instead of asking whether the contractual language is clear and then applying the exclusion's unambiguous meaning, it looks at the effects of the exclusion and concludes that the language must be unclear because it produces, in Devcon's view, bad results. That is an unduly intrusive way to evaluate the relationship between two sophisticated commercial entities bargaining at arm's length. *See Moessner*, 121 F.3d at 905 (recognizing that, as a general matter, "sophisticated insureds may exercise more bargaining power vis-a-vis the insurers, and therefore be in less need of protection from the courts than other insureds"); *see also Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006) (holding that, under Pennsylvania law, the reasonable expectations of an insured may overcome unambiguous policy language only when the insured is a non-commercial entity); *Owens-Illinois, Inc. v. United Ins. Co.*, 625 A.2d 1, 15 (N.J. Super. Ct. App. Div. 1993) ("The principles favoring the interests of the insured are less persuasive in the

context of a large skilled corporation."), *rev'd on other grounds*, 650 A.2d 974 (N.J. 1994). Whatever the insurance industry background for the framing of the exclusion at issue here, the dispositive point is that the language of the exclusion is, as the District Court noted, sufficiently plain to understand on its face and apply to these facts. That determination properly ends the inquiry. *See Clark v. Gen. Accident Ins. Co. PR. Ltd.*, 951 F. Supp. 559, 562 (D.V.I. 1997) ("Because the insuring clauses are not ambiguous, their plain meaning must be given effect.").

If it seems harsh to leave Devcon without coverage, we reiterate that both Devcon and Reliance are sophisticated businesses capable of bargaining to protect their interests. Indeed, it is no stretch to consider that injuries caused by clouds of dust and diesel fumes generated constantly over a period of several months represent the type of harm from which Reliance sought to shield itself when drafting the pollution exclusion.[5] Devcon accepted the insurance policy with full knowledge of the exclusion's broad language. It is not inequitable to hold Devcon to the terms of its bargain, even if, in retrospect, it wishes that it had negotiated for greater insurance coverage. Accordingly, we conclude that the pollution exclusion applies to

---

[5]This appeal does not raise the concerns expressed in cases like *Apana v. TIG Insurance Co.*, 574 F.3d 679 (9th Cir. 2009), which observed that "[a]pplying the literal terms of [pollution exclusions] will exclude a wide range of injuries from coverage; indeed, it is difficult to say what injuries would be covered for businesses, such as plumbers, that routinely deal with substances that are technically 'irritants' or 'contaminants.'" *Id.* at 684. Whatever the merits of such concerns, the plaintiffs' alleged injuries here go to the fundamental purpose of the pollution exclusion, namely, the withholding of coverage for injuries that result from the alleged release of large quantities of harmful substances into the atmosphere.

the injuries described in the underlying complaint and that the policy provides no coverage for those alleged harms.

B. *The Doctrine Of Reasonable Expectations*

Devcon argues that, even if the pollution exclusion removes plaintiffs' alleged injuries from coverage, we should nevertheless conclude that the doctrine of reasonable expectations requires Reliance to defend and indemnify it in the underlying action. The doctrine of reasonable expectations, as articulated under Virgin Islands law, requires examination of the reasonable expectations of the insured, when resolving an ambiguity in an insurance contract.[6] *Berne v. Aetna Ins. Co.*,

---

[6]The doctrine of reasonable expectations varies from jurisdiction to jurisdiction. In some jurisdictions, such as Delaware and the Virgin Islands, courts look to the insured's expectations only for the purpose of resolving contractual ambiguities and will not allow those expectations to override the policy's plain language. *See Hallowell v. State Farm Mut. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982) ("[T]he doctrine of reasonable expectations is applicable in Delaware to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is written in large print."). In others, including Pennsylvania and New Jersey, an insured may invoke the doctrine – even when the language of the insurance policy is plain – provided that the insured shows that extraordinary circumstances support application of coverage. *See Betz v. Erie Ins. Exch.*, 957 A.2d 1244, 1253 (Pa. Super. Ct. 2008) ("[A] court's focus upon the insured's 'reasonable expectations' is not limited only to situations in which the insurance contract might be deemed ambiguous ... ."); *see also G-I Holding, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 254 (3d Cir. 2009) (stating that, under New Jersey law, the reasonable

604 F. Supp. 958, 962 (D.V.I. 1985) (refusing to consider the insured's expectations when the policy contained no ambiguous terms). The doctrine applies only when a term in a policy is ambiguous, and an insured may not use it to obtain coverage when the plain language of an exclusion clearly places an injury beyond the policy's scope. *Id.* ("[T]he reasonable expectations doctrine 'is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.'" (quoting *Hallowell v. State Farm Mut. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982))).

In this case, Devcon asserts that we should invoke the doctrine to extend coverage because it reasonably expected the policy to cover "any liability incurred as a result of its negligent performance of its construction activities." (Appellant's Op. Br. at 40.) It also argues that it could not have reasonably anticipated that the dust would constitute a pollutant under the policy because the dust "is a naturally-occurring material that is literally the stuff St. Croix is made of." (*Id.* at 41.) Neither of these arguments is sufficient to trigger insurance coverage because Devcon has failed to show that the pollution exclusion is ambiguous, an essential prerequisite to application of the doctrine under Virgin Islands law.[7] *Berne*, 604 F. Supp. at 962.

expectations of the insured may overcome the plain meaning of a policy only under "exceptional circumstances"). In this case, we are concerned only with the former iteration of the doctrine.

[7]Assuming that we could consider Devcon's expectations, however, we would still reject its argument, which is premised on dust being a naturally occurring byproduct of V.I. Cement's normal construction activities. That argument is less than persuasive, first, because the dust clouds created by the construction were, by definition, not naturally occurring. They

## III. Conclusion

Reliance has carried its burden to show that the plain language of the pollution exclusion removes coverage for the plaintiffs' alleged harms. Accordingly, we will affirm the judgment of the District Court.

---

occurred because of V.I. Cement's activities. And second, the argument is unpersuasive because it assumes that a substance in nature – "the stuff St. Croix is made of" – cannot constitute a pollutant. Generally speaking, whether a substance is a pollutant depends on context, including the quantity of the substance released into the air or water. The question does not depend on whether the substance exists naturally but on whether it causes harm once dispersed. ENVIRONMENTAL PROTECTION AGENCY, TERMS OF ENVIRONMENT: GLOSSARY, ABBREVIATIONS AND ACRONYMS, Glossary P (May 8, 2008), http://www.epa.gov/OCEPAterms/pterms.html (defining as a pollutant "any substance introduced into the environment that adversely affects the usefulness of a resource or the health of humans, animals, or ecosystems"). The clouds of dust that engulfed parts of the American Midwest during the Great Depression were no less choking because they were the stuff that Oklahoma was made of than had they been something other than dust. Similarly, no one would say that an oil spill is not polluting simply because oil is a naturally occurring substance. Nor is it a defense to argue that harms caused by particulate dust should be covered because the dust was created as the result of V.I. Cement's usual business activities. Devcon could have foreseen the risks associated with its construction activities and accordingly sought adequate insurance coverage for those risks, not to mention that it may have undertaken more aggressive dust control efforts on the runway expansion project at issue in the underlying litigation. Hindsight and regret cannot expand contractual rights.

17