**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BILL H. APANA, Personal
Representative of the Estate of
Corrine Apana; CORRINE APANA,
executor,
        *Plaintiffs-Appellants,*

        v.

TIG INSURANCE COMPANY; JOHN
DOES 1-10; JANE DOES 1-10; DOE
CORPORATIONS 1-10,
        *Defendants-Appellees.*

No. 08-15369
D.C. No.
CV-06-00653-
JMS/LEK
District of Hawai'i,
Honolulu

---

BILL H. APANA, Personal
Representative of the Estate of
Corrine Apana; CORRINE APANA,
executor,
        *Plaintiffs-Appellees,*

        v.

TIG INSURANCE COMPANY,
        *Defendant-Appellant,*

        and

JOHN DOES 1-10; JANE DOES 1-10;
DOE CORPORATIONS 1-10,
        *Defendants.*

No. 08-15550

D.C. No.
1:06-CV-00653-
JMS-LEK
District of Hawai'i,
Honolulu

ORDER
CERTIFIED
QUESTION
HAWAI'I
SUPREME COURT

Filed July 15, 2009

8847

Before: Alex Kozinski, Chief Judge, Jay S. Bybee and
Consuelo M. Callahan, Circuit Judges.

---

## ORDER

The present case involves the application of a provision in the standard commercial general liability policy known as the "total pollution exclusion." The scope of this exclusion has been described as "one of the most hotly litigated insurance coverage questions" to arise over the past three decades. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999) (internal quotation marks omitted). Indeed "[r]arely has any issue spawned as many [court decisions], and as variant in rationales and results, . . . as has the pollution-exclusion clause." *Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 800 (Ala. 2002). To date, Hawai'i courts have not expressed a position on the scope of this exclusion. Accordingly, we respectfully ask the Hawai'i Supreme Court to exercise its discretion to accept and decide the certified question below.[1]

## I.   STATEMENT OF FACTS

### A.   *Underlying Dispute in Hawai'i State Court*

On July 2, 2003, Corrine Apana and her husband Bill filed suit against Dennis Marugame and H. Marugame Plumbers, Inc. ("HMP") in Hawai'i Circuit Court. The complaint alleged that on March 21, 2002, Dennis Marugame, a plumber employed by HMP, went to Walmart to service a clogged floor drain. He allegedly poured an "extremely strong drain

---

[1]Hawaii's Rules of Appellate Procedure request a "statement of facts showing the nature of the cause," "a statement of prior proceedings in the case," "the circumstances out of which the [certified] question arises," and "the question of law to be answered." HAW. R. APP. P. 13. We proceed accordingly.

cleaner" down the drain, which generated "noxious fumes" within the store. Corrine, a Walmart employee who was working nearby, breathed in these fumes and left the store bleeding from her nose and mouth. The Apanas sought damages for lost wages, pain and suffering, and loss of consortium.[2]

On August 10, 2003, HMP tendered a claim for defense to TIG Insurance Company ("TIG") under a commercial general liability policy of insurance that TIG had issued to HMP on February 7, 2002 ("the Policy"). On August 13, TIG rejected any obligation to indemnify or defend HMP based on the Policy's "Total Pollution Exclusion."

The Apanas, Marugame, and HMP entered into arbitration proceedings, which ultimately resulted in a judgment against Marugame and HMP in the amount of $87,770.27. The Apanas have apparently not collected on this judgment, but did obtain an assignment from Marugame and HMP for their rights against TIG under the Policy.

B. *TIG's Insurance Policy*

The Policy issued by TIG to HMP provides the following coverage:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend

---

[2]Corrine Apana died while this action was pending before the Hawai'i Circuit Court due to unrelated causes. Bill was appointed as the personal representative of her estate and substituted as the party plaintiff in her place. This order will refer to Corrine and Bill collectively as the Apanas, even though this federal suit is technically being brought by Bill individually and as the representative of Corrine's estate.

the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Policy also contains a "Total Pollution Exclusion" which provides:

This insurance policy does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

The Policy defines "pollutants" as follows:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Combining these various provisions, the Policy excludes coverage for any bodily injury resulting from the "discharge, dispersal, seepage, migration, release or escape" of "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot fumes, acids, alkalis, chemicals and waste."

## II.   PRIOR PROCEEDINGS

On November 13, 2006, the Apanas filed suit against TIG in Hawai'i Circuit Court alleging TIG had breached its contract by failing to defend or indemnify Marugame and HMP

in the underlying action. TIG removed the case to federal district court and then filed a motion for summary judgment based on the Total Pollution Exclusion. On August 16, 2007, the district court granted in part and denied in part TIG's motion. *Apana v. TIG Ins. Co.*, 504 F. Supp. 2d 998 (D. Haw. 2007). The court held that TIG had no duty to indemnify but did have a duty to defend. *Id.* at 1007-08.

On August 22, 2007, the Apanas moved for partial summary judgment on TIG's duty to defend. The district court, following the logic of its August 16 order, granted the motion. The Apanas filed a timely appeal regarding TIG's duty to indemnify and TIG filed a timely cross-appeal regarding its duty to defend.

## III.   LEGAL CIRCUMSTANCES

On appeal to the Ninth Circuit, the Apanas have asserted that the district court erred in finding that TIG did not owe a duty to indemnify. The Apanas argue that the Hawai'i Supreme Court would not apply the Total Pollution Exclusion to situations, such as this, that are not commonly thought of as environmental pollution. TIG argues that the language of the Total Pollution Exclusion is clear and the Hawai'i Supreme Court would apply its terms literally.

### A.   *Two Sides of the National Debate*

The scope of the total pollution exclusion has been repeatedly litigated, spawning conflicting judicial decisions throughout the country. *See Porterfield*, 856 So.2d at 800 ("[T]here exists not just a split of authority, but an absolute fragmentation of authority."). Most State courts fall roughly into one of two broad camps. *See MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1208-09 (Cal. 2003) (explaining the division of authority).

Some courts apply the exclusion literally because they find the terms to be clear and unambiguous. *See Whittier Props.,*

*Inc. v. Ala. Nat. Ins. Co.*, 185 P.3d 84, 89-92 (Alaska 2008); *TerraMatrix, Inc. v. U.S. Fire Ins. Co.*, 939 P.2d 483, 487-88 (Colo. Ct. App. 1997); *Heyman Assocs. No. 1 v. Ins. Co. of State of Pa.*, 653 A.2d 122, 129-33 (Conn. 1995); *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1137-41 (Fla. 1998); *Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216, 220-22 (Iowa 2007); *McKusick v. Travelers Indem. Co.*, 632 N.W.2d 525, 529-32 (Mich. Ct. App. 2001); *Auto-Owners Ins. Co. v. Hanson*, 588 N.W.2d 777, 779-81 (Minn. Ct. App. 1999); *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 102-06 (Mo. Ct. App. 2004); *Sokoloski v. Am. W. Ins. Co.*, 980 P.2d 1043, 1044-45 (Mont. 1999); *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 635 N.W.2d 112, 118-21 (Neb. 2001); *Bituminous Cas. Corp. v. Cowen Constr., Inc.*, 55 P.3d 1030, 1033-35 (Okla. 2002); *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106-08 (Pa. 1999); *S.D. State Cement Plant Comm'n v. Wausau Underwriters Ins. Co.*, 616 N.W.2d 397, 405-07 (S.D. 2000); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521-22 (Tex. 1995); *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539, 541 (Va. 2006); *Peace ex rel. Lerner v. Nw. Nat'l Ins. Co.*, 596 N.W.2d 429, 438-46 (Wis. 1999).

Other courts have limited the exclusion to situations involving traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find that the exclusion contradicts policyholders' reasonable expectations. *See Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 805-07 (Ala. 2002); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 790-92 (Ariz. Ct. App. 2000); *Minerva Enters., Inc. v. Bituminous Cas. Corp.*, 851 S.W.2d 403, 404-06 (Ark. 1993); *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1208-18 (Cal. 2003); *Danbury Ins. Co. v. Novella*, 727 A.2d 279, 281-83 (Conn. Super. Ct. 1998) (distinguishing *Heyman Assocs. No. 1 v. Ins. Co. of State of Pa.*, 653 A.2d

122 (Conn. 1995), listed above); *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 75-82 (Ill. 1997); *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 948-49 (Ind. 1996); *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680-82 (Ky. Ct. App. 1996); *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So.2d 119, 125-28, 134-36; *Sullins v. Allstate Ins. Co.*, 667 A.2d 617, 620-24 (Md. 1995); *W. Alliance Ins. Co. v. Gill*, 686 N.E.2d 997, 999-1001 (Mass. 1997); *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692, 697-98 (N.C. Ct. App. 1991), *overruled on other grounds by Gaston County Dyeing Mach. Co. v. Northfield Ins. Co.*, 524 S.E.2d 558, 565 (N.C. 2000); *Weaver v. Royal Ins. Co. of Am.*, 674 A.2d 975, 977-78 (N.H. 1996); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 932-39 (N.J. 2005); *Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15, 18-21 (N.Y. 2003); *Andersen v. Highland House Co.*, 757 N.E.2d 329, 332-34 (Ohio 2001); *Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292, 294-96 (Wash. 2000); *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1062-66 (Wyo. 2002).[3]

This question is dispositive of the present case. Applying the first rule, as the district court did, would result in a finding that TIG did not owe a duty to defend—the Apanas' injuries clearly resulted from the "discharge" and "dispersal" of a "gaseous" "vapor" or "chemical[ ]." Applying the latter approach would lead to the opposite result either because the provision is ambiguous or is contrary to policyholders' reasonable expectations—using a plumbing-liquid to clear a drain appears to be a localized use of a toxic product in the ordinary course of business that would not normally be considered environmental pollution.

---

[3]We have only referenced a representative decision from each state that has considered the scope of the total pollution exclusion. For a more comprehensive collection of cases, see Claudia G. Catalano, *What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy*, 98 A.L.R. 5th 193 (2002) (electronic version updated weekly).

## B. *Hawai'i Case Law*

Hawai'i has not weighed in on which approach it would adopt, and its prior case law does not indicate a preference for either mode of analysis. On one hand, in Hawai'i "policies are to be construed in accord with the reasonable expectations of a layperson," *Guajardo v. AIG Haw. Ins. Co.*, 187 P.3d 580, 587 (Haw. 2008) (internal quotation marks omitted), "the objectively reasonable expectations . . . will be honored even though painstaking study of the policy provisions would have negated those expectations," *Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 745 (Haw. 2007) (internal quotation marks and alterations omitted), and Hawai'i refuses to "apply a mechanistic reading of insurance contracts," *Guajardo*, 187 P.3d at 587. These cases indicate that Hawai'i might enforce a lay person's reasonable expectations even if "painstaking study" of the pollution exclusion would require a different result.

On the other hand, Hawaiian courts have stated that "the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." *Dairy Rd. Partners v. Island Ins. Co.*, 992 P.2d 93, 106 (Haw. 2000) (internal quotation marks omitted). Accordingly, the policyholder's reasonable expectations are "followed only when the contract taken as a whole, is reasonably subject to differing interpretation." *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 684 P.2d 960, 964 (Haw. 1984) (internal quotation marks and alteration omitted). These cases indicate that Hawai'i courts might not apply the policyholder's reasonable expectations to the total pollution exclusion because its terms are unambiguous.

Based on prior case law alone, we cannot discern how Hawai'i would interpret a clause that by its terms excludes coverage but which might upset a layperson's reasonable expectations with regards to a "pollution" exclusion.

## C.   *Question's Impact*

This issue is a matter of exceptional importance for Hawaiian insurers and insureds. Applying the literal terms of this provision will exclude a wide range of injuries from coverage; indeed, it is difficult to say what injuries would be covered for businesses, such as plumbers, that routinely deal with substances that are technically "irritants" or "contaminants." On the other hand, applying the exclusion in accordance with the reasonable expectations of a layperson would potentially increase the cost of all general liability policies and undermine the certainty of contract, making the clear terms of an agreement subject to the vagaries of the "reasonable layperson."

In sum, the present case involves "a question concerning the law of Hawai'i that is determinative of the cause" and for which "there is no clear controlling precedent in the Hawai'i judicial decisions" that would resolve the dispute. HAW. R. APP. P. 13. Moreover, this question has created a deep split among other courts that have considered the issue and will have far-reaching consequences for the people and businesses of Hawai'i.

## IV.   CERTIFIED QUESTION

In light of the foregoing discussion, we respectfully certify the following question to the Hawai'i Supreme Court:

> Does a total pollution exclusion provision in a standard commercial general liability insurance policy apply to localized uses of toxic substances in the ordinary course of business (such as when a plumber uses chemicals to open a clogged drain and an employee working nearby inhales the fumes and suffers injuries), or is it limited to situations that a reasonable layperson would consider traditional environmental pollution?

We do not intend the form of this question to limit the Hawai'i Supreme Court's consideration of the issues relevant to disposing of this matter. If the Hawai'i Supreme Court decides to consider this certified question, it may reformulate the issue in light of the parties' contentions or other relevant considerations.

## V.   ORDER

The clerk of our court is hereby ordered to transmit a copy of this order to the Hawai'i Supreme Court under official seal of the United States Court of Appeals for the Ninth Circuit. *See* HAW. R. APP. P. 13(c). Moreover, the clerk is ordered to provide "original or copies of all or any portion of the record" in this case as "[t]he Hawai'i Supreme Court may, in its discretion, require." *Id.*

Further proceedings in our court on the certified question are stayed pending the Hawai'i Supreme Court's decision, and this case is withdrawn from submission. This panel retains jurisdiction over further proceedings upon receiving a decision from the Hawai'i Supreme Court. The parties shall notify the clerk of this court within one week after the Hawai'i Supreme Court accepts or rejects certification. If the Hawai'i Supreme Court accepts the certified question, the parties shall file a joint status report to our court every six months after the date of acceptance, or more frequently if circumstances warrant.

It is so ORDERED.

Chief Judge Alex Kozinski
United States Court of Appeals
for the Ninth Circuit

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.