**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTURY SURETY COMPANY,
            *Plaintiff-Appellant,*

v.

CASINO WEST, INC.,
            *Defendant-Appellee.*

No. 10-17309

D.C. No.
3:07-cv-00636-
RCJ-RAM
District of Nevada,
Reno

ORDER

Filed April 6, 2012

Before: Carlos F. Lucero,* Consuelo M. Callahan, and
N. Randy Smith, Circuit Judges.

## ORDER

We certify to the Supreme Court of Nevada the questions set forth in Part III of this order.

Further proceedings in this court are stayed pending receipt of the answer to the certified questions. This case is withdrawn from submission until further order of this court or an order declining to accept the certified questions. If the Supreme Court of Nevada accepts the certified questions, the parties will file a joint report six months after the date of acceptance and every six months thereafter, advising us of the status of the proceeding.

*The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit, sitting by designation.

## I.

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we certify to the Supreme Court of Nevada questions of law regarding the proper interpretation of the insurance policy exclusions at issue in this appeal. It appears that "there is no controlling precedent in the decisions" of the Supreme Court of Nevada regarding the interpretation of insurance policy exclusions involved in this case, and the answers to these certified questions are "determinative" of the pending appeal. Nev. R. App. P. 5(a). Our phrasing of the issues is not meant to restrict the Supreme Court of Nevada's consideration of the case, and "[w]e recognize that the Court may, in its discretion, reword the certified question[s]." *Progressive Gulf Ins. Co. v. Faehnrich*, 627 F.3d 1137, 1140 (9th Cir. 2010).

## II.

Century Surety Company (Century) is designated the appellant in the Supreme Court of Nevada, because Century appeals the district court's findings on these issues. Casino West, Inc. (Casino West) is therefore designated the respondent in this request.

The caption of the case is:

CENTURY SURETY COMPANY, Plaintiff-Appellant,

v.

CASINO WEST, INC., Defendant-Appellee.

The names and addresses of counsel for the parties are as follows:

James Wayne Bradshaw, McDonald Carano Wilson, LLP, Reno, NV; H. Douglas Galt, Woolls & Peer, Los Angeles, CA, for Appellant.

Scott A. Glogovac and Gregory J. Livingston, Burton, Bartell & Glogovac, Reno, NV, for Appellee.

## III.

The questions of law to be answered are:

(1) Does the pollution exclusion in Century's insurance policy exclude coverage of claims arising from carbon monoxide exposure?

(2) Does the indoor air quality exclusion in Century's insurance policy exclude coverage of claims arising from carbon monoxide exposure?

## IV.

The statement of facts is as follows:

Casino West owns and operates the Casino West Motel in Yerington, Nevada. Century is an insurance company that insured Casino West under a comprehensive general liability insurance policy.

Four individuals died while staying in a room at the Casino West Motel. The Washoe County Medical Examiner/Coroner determined that the deceased individuals died of acute carbon monoxide poisoning. Carbon monoxide fumes from the motel's pool heater room had permeated into the deceased individuals' room, because the air intake openings had been blocked. The effects of the carbon monoxide poisoning included cerebral edema[1] and blood carboxyhemoglobin satura-

---

[1]"Cerebral edema" is "[b]rain edema." *Taber's Cyclopedic Medical Dictionary* 665 (20th ed. 2005). "Edema" is "[a] localized or generalized condition in which the body tissues contain an excessive amount of tissue fluid." *Id.* "Edema may result from . . . chemical substances such as bacterial toxins, venoms, caustic substances, and histamine." *Id.*

tion.[2]

Century's policy was in force when the individuals died. The policy generally obligated Century to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Century had a duty under the policy to defend the insured against any suit seeking those damages, but no duty to defend against suits seeking damages to which the insurance policy did not apply.

The policy contains two exclusions crucial to the disposition of this case. The first is the "pollution exclusion," which Century adopted in 2001. The pollution exclusion reads as follows:

This insurance does not apply to:

. . .

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

---

[2]"Carboxyhemoglobin" is a "combination of hemoglobin and carbon monoxide formed in the blood when carbon monoxide is inhaled with resulting loss of ability of the blood to combine with oxygen . . . ." *Webster's Third New International Dictionary of the English Language*, 336 (unabr. 1993).

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

. . .

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"
. . . .

The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The "building heating exception" to the pollution exclusion, added in 2001, is subsection (1)(a)(i). The "hostile fire exception" to the pollution exclusion is subsection (1)(a)(iii).

The second crucial exclusion is the "indoor air quality exclusion," which is part of the special exclusions and limitations endorsement attached to the policy. The indoor air quality exclusion reads as follows:

A. In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Coverages A & B:

This insurance does not apply to:

. . .

6. Mold, Fungi, Virus, Bacteria, Air Quality, Contaminants, Minerals or Other Harmful Materials

. . .

b. "Bodily injury", "property damage", or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any

toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause . . . .

Century received notice of the incident and retained pre-litigation defense counsel for Casino West. Later, Century sent Casino West a letter stating it would handle the case, but it reserved its right to deny coverage. In the letter, Century referenced the endorsement and stated that the exclusions might preclude coverage for deaths caused by exposure to carbon monoxide.

After Century received copies of the autopsy reports for the deceased individuals, Century sent Casino West a letter stating that there did not appear to be any coverage in light of the autopsy reports and the endorsement. However, Century offered to continue to allow its retained defense counsel to assist Casino West until the estates of the deceased individuals filed formal lawsuits. Once the estates filed suit, Century would determine whether coverage was precluded.

Century subsequently sent Casino West a letter stating that the injuries caused by the incident were not covered by the policy. Century also advised Casino West that it would stop retaining its defense counsel, because no formal lawsuit had been filed against Casino West.

After Century sent that letter, the heirs and estate of Juan Pablo Chavez, one of the deceased individuals, filed a wrongful death suit against Casino West in the Washoe County District Court. Century denied coverage for the claims asserted by the Chavez plaintiffs.

Casino West entered into settlement agreements with the estates of two of the remaining deceased individuals.

The estate of Donna Vega-Robles (the fourth deceased individual) and the guardian ad litem of Ms. Vega-Robles's

son then filed a wrongful death suit against Casino West in the Lyon County District Court. Century also denied coverage for the claims asserted by the Vega-Robles plaintiffs.

After denying coverage for Casino West's insurance claims, Century filed suit in federal court (based on diversity jurisdiction) against Casino West for declaratory relief. Century sought a judgment declaring that Century had no duty to defend or indemnify Casino West with respect to wrongful death suits arising from the deaths of the four individuals at Casino West's premises. Casino West counterclaimed for breach of contract, bad faith, and insurance unfair trade practices; Casino West also filed an independent bad faith suit.

Century requested summary judgment or partial summary judgment on its complaint, Casino West's counterclaim, and Casino West's complaint. At issue was the application of the two key exclusions in Century's insurance policy covering Casino West.

The district court entered an order denying Century's motion for summary judgment. The district court found that the exclusions at issue were ambiguous and therefore did not preclude coverage. The pollution exclusion was ambiguous, because "an ordinary policyholder may not reasonably characterize carbon monoxide emitted from a motel pool heater as pollution," and "a reasonable policyholder might not view the exception regarding fumes from the building's heater as an indication that all other possible types of indoor fumes would be excluded as 'pollutants.' " The indoor air quality exclusion was ambiguous, because, while it was "reasonable to consider carbon monoxide" within its ambit, it was also reasonable to construe the exclusion "as applying only to ongoing air quality issues that result from biological organisms, asbestos or silica." Century then requested that the district court allow Century to appeal the order denying summary judgment to the Ninth Circuit, which Casino West opposed. The district court denied Century's motion. Later, Century paid Casino West

certain costs Casino West had incurred in the wrongful death actions. Century and Casino West then jointly requested to allow appeal of the district court order denying summary judgment to the Ninth Circuit. The district court granted the joint motion allowing appeal. The Ninth Circuit then granted permission for an interlocutory appeal.

## V.

The nature of the controversy is as follows:

Under Nevada law, "if an insurer wishes to exclude coverage by virtue of an exclusion in its policy," the insurer "must (1) write the exclusion in obvious and unambiguous language in the policy, (2) establish that the interpretation excluding covering under the exclusion is the only interpretation of the exclusion that could fairly be made, and (3) establish that the exclusion clearly applies to this particular case." *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 674 (Nev. 2011).

If an insurance contract provision is unambiguous, Nevada courts will "interpret and enforce it according to the plain and ordinary meaning of its terms." *Id.* at 672. Nevada courts "are not free to modify or vary the terms of an unambiguous agreement." *All Star Bonding v. State*, 62 P.3d 1124, 1126 (Nev. 2003) (internal quotation marks omitted). Terms not defined in an insurance policy must be given their plain and ordinary meaning. *Catania v. State Farm Life Ins. Co.*, 598 P.2d 631, 633 (Nev. 1979) ("[I]nsurance clauses should be taken and understood in their plain, ordinary and popular sense . . . ."); *Reno Club, Inc. v. Young Inv. Co.*, 182 P.2d 1011, 1016 (Nev. 1947) ("In the absence of clear evidence of a different intention, words must be presumed to have been used in their ordinary sense, and given the meaning usually and ordinarily attributed to them."). Even the use of terms in a broad sense may not create an ambiguity. *See Powell*, 252 P.3d at 674 (noting that anti-concurrent clauses in insurance policies are

often broad, but such clauses are valid so long as they are sufficiently clear).

However, "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 621 (Nev. 2011) (internal quotation marks omitted). A provision in an insurance policy is ambiguous "if it is reasonably susceptible to more than one interpretation." *Id.* (internal quotation marks omitted). "When a provision in an insurance policy is ambiguous, the provision should be construed to effectuate the reasonable expectations of the insured." *Id.* at 622 (internal quotation marks omitted). However, "[a]bsent the finding of an ambiguity in the policy, the reasonable expectations doctrine does not help" an insured. *Farmers Ins. Exch. v. Young*, 832 P.2d 376, 379 n.3 (Nev. 1992).

A reading of an insurance provision "must include reference to the entire policy and be read as a whole in order to give reasonable and harmonious meaning to the entire policy." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993). Finally, "[a] contract," such as an insurance policy, "should not be construed so as to lead to an absurd result." *Reno Club*, 182 P.2d at 1017.

## A.

The scope of the pollution exclusion "has been repeatedly litigated, spawning conflicting judicial decisions throughout the country." *Apana v. TIG Ins. Co.*, 574 F.3d 679, 682 (9th Cir. 2009). Most state court decisions fall into "one of two broad camps." *Id.* "Some courts apply the exclusion literally because they find the terms to be clear and unambiguous." *Id.* (listing cases). Some have even found the exclusion clear and unambiguous when applied to carbon monoxide poisoning, similar to the case here. *See, e.g.*, *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 (5th Cir. 2009) ("In sum, the emission of carbon monoxide from a furnace into an

apartment unambiguously satisfies the pollution exclusion's requirement of a 'discharge, dispersal, seepage, migration, release, or escape.' ").

"Other courts have limited the exclusion to situations involving traditional environmental pollution, either because they find the terms of the exclusion to be ambiguous or because they find that the exclusion contradicts policyholders' reasonable expectations." *Apana*, 547 F.3d at 682-83 (listing cases); *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181-82 (6th Cir. 1999) (listing cases). The Seventh Circuit explained the rationale for such a limitation:

> Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992).

Nevada has not expressly decided the scope of the pollution exclusion, and the relevant Nevada case law outlined above does not indicate which approach the state would adopt. Casino West contends that the fact that so many courts have reached different opinions conclusively establishes the exclusion as ambiguous. However, Casino West has not cited any Nevada cases so holding, and we have not found any on our own. Given the magnitude of the hotel industry in Nevada, we believe the question of the ambiguity of this standard insur-

ance exclusion is one of exceptional importance to Nevada insurers and insureds. Thus, we respectfully request the Nevada Supreme Court provide an answer to this question of Nevada state law.

### B.

Unlike the scope of the pollution exclusion, the scope of the indoor air quality exclusion has not been repeatedly litigated. In fact, there do not appear to be any published cases construing this exclusion. However, the same general arguments regarding ambiguity apply to this exclusion in the same way they apply to the pollution exclusion.

As indicated above, Nevada has not expressly decided the scope of the indoor air quality exclusion, and the relevant Nevada case law outlined above does not indicate how the state would deal with the issue. We also believe the question is important to Nevada insurers and insureds, and therefore respectfully request the Nevada Supreme Court provide an answer to this question of Nevada law.

### C.

These questions are determinative in this case. If both exclusions are ambiguous, as the district court found, then Casino West's claims would be covered by Century. However, if one or both of the exclusions is unambiguous, then the opposite result would occur and Century would have no duty to defend or indemnify Casino West with regard to the wrongful death suits.

### VI.

Because this appeal presents "open question[s] of Nevada state law that will determine the outcome of this case . . . [w]e respectfully request that the Supreme Court of Nevada accept and decide the question[s] certified." *Progressive Gulf Ins.*,

627 F.3d at 1140. We agree to abide by the decision of the Supreme Court of Nevada, because "[t]he written opinion of the Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties." Nev. R. App. P. 5(h); *see Progressive Gulf Ins.*, 627 F.3d at 1140.

## VII.

The Clerk of the Court is hereby directed to immediately transmit to the Supreme Court of Nevada, under official seal of the Ninth Circuit, a copy of this order and request for certification and all relevant briefs and excerpts of record pursuant to Rule 5 of the Nevada Rules of Appellate Procedure.

**IT IS SO ORDERED.**

CONSUELO M. CALLAHAN
Circuit Judge, U.S. Court of
Appeals for the Ninth Circuit