**130 Nev., Advance Opinion 42**

IN THE SUPREME COURT OF THE STATE OF NEVADA

CENTURY SURETY COMPANY,
Appellant,
vs.
CASINO WEST, INC.,
Respondent.

No. 60622

FILED

MAY 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Certified questions, in accordance with NRAP 5, regarding the interpretation of exclusionary provisions in an insurance policy. United States Court of Appeals for the Ninth Circuit; Carlos F. Lucero, Consuelo M. Callahan, and N. Randy Smith, Judges.

*Questions answered.*

McDonald Carano Wilson LLP and James W. Bradshaw and Debbie A. Leonard, Reno; Woolls & Peer and H. Douglas Galt, Los Angeles, California,
for Appellant.

Burton Bartlett & Glogovac and Scott A. Glogovac, Reno,
for Respondent.

Armstrong Teasdale LLP and Kevin R. Stolworthy and Conor P. Flynn, Las Vegas,
for Amicus Curiae Complex Insurance Claims Litigation Association.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, DOUGLAS, J.:

The United States Court of Appeals for the Ninth Circuit has certified questions of law to this court regarding the interpretation of two

exclusionary provisions in a motel's insurance policy issued by appellant Century Surety Company: the absolute pollution exclusion and the indoor air quality exclusion. The certified questions ask:

> (1) Does the pollution exclusion in Century's insurance policy exclude coverage of claims arising from carbon monoxide exposure?

> (2) Does the indoor air quality exclusion in Century's insurance policy exclude coverage of claims arising from carbon monoxide exposure?

We determine that, when applied to the facts of this case, both exclusions are ambiguous because they are subject to multiple reasonable interpretations; therefore, under the circumstances presented, we answer these questions in the negative.

## BACKGROUND

Four people died from carbon monoxide poisoning while sleeping in a room directly above a pool heater in the Casino West Motel, the respondent here. Casino West sought coverage for the deaths from its insurer, Century Surety Company, but Century denied the claims based on two provisions of Casino West's general liability policy: the absolute pollution exclusion, which excludes coverage for "'[b]odily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants,'" and the indoor air quality exclusion, which excludes coverage for "'[b]odily injury,' 'property damage,' or 'personal and advertising injury' arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause.'" After Century denied coverage, it brought a declaratory relief claim in the federal district court.

In response, Casino West filed a counterclaim. Century then moved for summary judgment on both its claim and Casino West's counterclaim.

The federal district court denied Century's motion. The court determined that the policy exclusions were ambiguous and interpreted the ambiguity in Casino West's favor. With permission from the federal district court to appeal the interlocutory decision, Century sought review in the Ninth Circuit Court of Appeals, which certified the aforementioned questions to this court after determining that existing Nevada law did not clearly resolve the issue. We subsequently accepted the questions and directed briefing.[1]

*DISCUSSION*

The purpose of contract interpretation is to determine the parties' intent when they entered into the contract. *See Sheehan & Sheehan v. Nelson Malley & Co.*, 121 Nev. 481, 488, 117 P.3d 219, 224 (2005). We interpret an insurance policy "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 109 Nev. 42, 44, 846 P.2d 303, 304 (1993). And we consider the policy as a whole "to give reasonable and harmonious meaning to the entire policy." *Id.* Further, an insurance policy's interpretation should not lead to an absurd or unreasonable result. *Reno Club, Inc. v. Young Inv. Co.*, 64 Nev. 312, 325, 182 P.2d 1011, 1017 (1947).

---

[1]The Complex Insurance Claims Litigation Association filed an amicus curiae brief supporting Century's interpretation of the provisions at issue.

If an insurance policy is unambiguous, we interpret it according to the plain meaning of its terms. *Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. ___, ___, 252 P.3d 668, 672 (2011). An insurance policy is considered ambiguous if "it creates [multiple] reasonable expectations of coverage as drafted." *Id.* A seemingly clear policy can be rendered ambiguous when applying the policy to the facts leads to multiple reasonable interpretations. *See Rubin v. State Farm Mut. Auto. Ins. Co.*, 118 Nev. 299, 303-04, 43 P.3d 1018, 1021 (2002). We interpret ambiguities in an insurance contract against the drafter, which is typically the insurer. *Powell*, 127 Nev. at ___, 252 P.3d at 672. So, if an insurance policy has any ambiguous terms, this court will interpret the policy to effectuate the insured's reasonable expectations. *Id.*; *see also Farmers Ins. Exch. v. Young*, 108 Nev. 328, 330, 832 P.2d 376, 377 (1992).

Clauses providing coverage are broadly interpreted "so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer." *Nat'l Union Fire Ins. Co. of the State of Pa., Inc. v. Reno's Exec. Air, Inc.*, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984). Any exclusion must be narrowly tailored so that it "clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered." *Griffin v. Old Republic Ins. Co.*, 122 Nev. 479, 485, 133 P.3d 251, 255 (2006) (internal quotation marks omitted). To preclude coverage under an insurance policy's exclusion provision, an insurer must (1) draft the exclusion in "obvious and unambiguous language," (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish

Supreme Court
OF
Nevada

(O) 1947A

4

that the exclusion plainly applies to the particular case before the court. *Powell*, 127 Nev. at ___, 252 P.3d at 674 (2011).

*The absolute pollution exclusion*

The absolute pollution exclusion in Casino West's insurance policy provides that the policy does not apply to

> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>
> > (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:
> >
> > > (i) [Building-heater exception:] "[b]odily injury" if sustained within a building caused by smoke, fumes, vapor or soot from equipment used to heat that building.

The policy defines a pollutant as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."

The parties have competing interpretations of the absolute pollution exclusion. Casino West argues that the absolute pollution exclusion only applies to traditional environmental pollution because the exclusion contains environmental terms of art. Casino West notes that other courts have interpreted similar exclusions to apply only to traditional forms of pollution. Casino West also contends that the fact that it and Century disagree on the exclusion's applicability demonstrates the policy's ambiguity. To the contrary, Century asserts that the absolute pollution exclusion applies to this case to exclude coverage because carbon monoxide is a "pollutant" under the policy's terms. Further, Century

SUPREME COURT
OF
NEVADA

(O) 1947A

5

contends that the building-heater exception demonstrates that the drafters intended the absolute pollution exclusion to apply to both indoor and outdoor pollution. Specifically, Century asserts that, if the absolute pollution exclusion applied only to traditional environmental pollution, the building-heater exception would be unnecessary, as harm from a building's heating system would not fall within the absolute pollution exclusion.

The absolute pollution exclusion is a standard provision in general commercial liability policies. *See Apana v. TIG Ins. Co.*, 574 F.3d 679, 680 (9th Cir. 2009). Its scope is a matter of first impression in Nevada, but it has been heavily litigated in numerous other jurisdictions, resulting in conflicting outcomes. *See id.* at 682 (collecting cases). Some courts have found that the exclusion is unambiguous and applies to all types of pollution. *Id.* But others have concluded that its application is limited to situations involving traditional environmental pollution, either because they find that the exclusion's terms are ambiguous or because the application of the exclusion to nontraditional forms of pollution would contradict the policyholders' reasonable expectations. *Id.*

As drafted here, the absolute pollution exclusion permits multiple reasonable interpretations of coverage. As relevant here, the exclusion's language can be read to support Century's interpretation. Initially, it is reasonable to categorize carbon monoxide as a pollutant because it is a gaseous element that contaminates the air, making it dangerous and sometimes deadly to breathe. *See Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 637 (Minn. 2013) (noting that both the federal Clean Air Act and the Minnesota Pollution Control Agency treat carbon monoxide as a pollutant). And the exclusion precludes coverage for

any injury resulting from a pollutant. Therefore, it is reasonable to conclude that the policy would not cover any damage that carbon monoxide caused. But Casino West's interpretation that the exclusion's applicability is limited only to claims for traditional environmental pollution is also reasonable. Taken at face value, the policy's definition of a pollutant is broad enough that it could be read to include items such as soap, shampoo, rubbing alcohol, and bleach insofar as these items are capable of reasonably being classified as contaminants or irritants. So, if no limitations are applicable, the pollution exclusion would seem to preclude coverage for any accident stemming from such items, including a person slipping on a puddle of bleach or developing a skin rash from using a bar of soap. Such results would undoubtedly be absurd and contrary to any reasonable policyholder's expectations. *See Reno Club*, 64 Nev. at 325, 182 P.2d at 1017 (explaining that insurance contracts should not be interpreted to require an absurd or unreasonable result). The dictionary definition of "pollutant" supports Casino West's proposed limitation on the absolute pollution exclusion. *See Merriam-Webster's Collegiate Dictionary* 961 (11th ed. 2012) (defining "pollute" as "to contaminate (an environment) esp[ecially] with man-made waste" and a "pollutant" as "something that pollutes"). Therefore, a reasonable policyholder could construe the absolute pollution exclusion to only apply to traditional environmental pollution.

The absolute pollution exclusion's drafting history further supports the conclusion that the exclusion was designed to apply only to outdoor, environmental pollution. *Cf. J.E. Dunn Nw., Inc. v. Corus Constr. Venture, L.L.C.*, 127 Nev. ___, ___, 249 P.3d 501, 505 (2011) (providing that, when interpreting statutes, we look to the statute's

legislative history for guidance to determine the law's proper scope). Other courts have recognized that the pollution exclusion was traditionally included in insurance policies to avoid the potentially grand expense resulting from *environmental* litigation. *Am. States Inc. v. Koloms*, 687 N.E.2d 72, 81 (Ill. 1997). The theory underlying such exclusions appears to be that, if an insured knows that his or her policy covers any type of pollution, he or she may take fewer precautions to ensure that such environmental contaminations do not occur. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 381 (N.C. 1986). Thus, in the absence of an exclusion covering environmental pollution, an insurer could incur huge financial costs for litigation stemming from such pollution. *Id.* In light of these principles, courts have determined that—from the insurers' standpoint—the exclusion was designed to protect against the "yawning extent of potential liability arising from the gradual or repeated discharge of hazardous substances *into the environment.*" *Id.* (emphasis added).

Moreover, while Century's argument that the building-heater exception demonstrates that the exclusion applies to both external and internal contamination is reasonable, the building-heater exception does not necessarily preclude this court from concluding that Casino West's interpretation is equally reasonable. In particular, one reasonable explanation for the inclusion of the building-heater exception is that it was meant to clarify that the absolute pollution exclusion does not apply to a particular situation, rather than to expand the absolute pollution exclusion's scope beyond the parameters of how that exclusion has previously been interpreted. *See Wolters*, 831 N.W.2d at 635 n.2

(recognizing that courts have limited the absolute pollution exclusion to "situations involving traditional environmental pollution").

In light of the exclusion's ambiguity, we must interpret the provision to effectuate Casino West's reasonable expectations. *See Powell*, 127 Nev. at ___, 252 P.3d at 672. When considering the significant amount of authority interpreting the absolute pollution exclusion to apply only to traditional environmental pollution, *see id.*, one cannot rely on an exception to prove that the exclusion also applies to indoor pollution. To demonstrate that the absolute pollution exclusion applies to nontraditional indoor pollutants, an insurer must plainly state that the exclusion is not limited to traditional environmental pollution. *See id.* at ___, 252 P.3d at 674 (providing that to preclude coverage under an insurance policy, an insurer must draft the exclusion in "obvious and unambiguous language"). Accordingly, we determine that the absolute pollution exclusion does not bar coverage for the injuries caused by carbon monoxide in this case.

*The indoor air quality exclusion*

The indoor air quality exclusion has not been as heavily litigated as the absolute pollution exclusion, so we do not have the benefit of other courts' interpretations of similar provisions. Under the indoor air quality exclusion, Casino West's insurance policy does not apply to

. . . .

> b. "Bodily injury[,]" "property damage[,]" or "personal and advertising injury" arising out of, caused by, or alleging to be contributed to in any way by any toxic, hazardous, noxious, irritating, pathogenic or allergen qualities or characteristics of indoor air regardless of cause . . . .

SUPREME COURT
OF
NEVADA

(O) 1947A

9

Century contends that the indoor air quality exclusion is unambiguous and that the "regardless of cause" policy language precludes liability for any injury suffered from indoor air quality issues, without limitation. Casino West argues that Century's interpretation is overly broad and that the air quality exclusion should be limited to preclude only injuries arising from inherent and continuous air quality issues.

Like the pollution exclusion, the indoor air quality exclusion is subject to multiple reasonable interpretations. In line with Century's interpretation, one could read the exclusion's language to exclude coverage for any injury caused by any condition of the air, regardless of whether the condition is permanent or temporary. Specifically, the policy states that it excludes coverage of any bodily injury resulting from hazardous air quality, and the "regardless of cause" language indicates that no limitations restrict the exclusion's applicability. On the other hand, Casino West's interpretation—limiting the exclusion's applicability only to inherent and continuous air quality issues—is also reasonable. As with the pollution exclusion, the indoor air quality provision is drafted so broadly that, if no limitations are applied to it, its applicability could stretch well beyond a reasonable policyholder's expectations and lead to absurd results. For instance, read to exclude coverage for any condition of the air, the policy would not cover any injury resulting from a guest's inhalation of smoke from a fire inside the motel, but would cover any burn injuries caused by that same fire. Such potentially absurd results illustrate the need for some limitations on the exclusion's applicability. *See Reno Club*, 64 Nev. at 325, 182 P.2d at 1017 (insurance contracts should not be interpreted to require an absurd or unreasonable result).

The indoor air quality exclusion's ambiguity requires us interpret the provision to effectuate Casino West's reasonable expectation that the exclusion only applies to inherent and continuous conditions. The indoor air quality provision excludes coverage for certain types of air "qualities or characteristics." As relevant here, a "quality" refers to the "peculiar and essential character" or "an inherent feature" of something. *See Merriam-Webster's Collegiate Dictionary* 1017 (11th ed. 2012). And a "characteristic" is "a distinguishing trait, quality, or property." *Id.* at 207. These definitions evoke the idea of something that is permanently present in the air, rather than a temporary condition. Thus, a policyholder could reasonably expect that the indoor air quality exclusion applies only to continuously present substances that render the air harmful, and that the policy allows recovery for an unexpected condition that temporarily affects the air quality inside of a building. *See id.* at 207, 1017. Accordingly, we conclude that the indoor air quality exclusion does not bar coverage for the injuries at issue in this case.[2]

---

[2]To the extent that the parties disagree over whether the carbon monoxide in this case was temporarily or continuously present in the air, that question presents a factual issue, which is outside our province in answering the certified questions. *See In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. ___, ___, 267 P.3d 786, 795 (2011) (adopting the majority view "that this court is bound by the facts as stated in the certification order and its attachment[s] and that this court cannot make findings of fact in responding to a certified question"). Thus, for the purpose of answering this certified question, we accept the Ninth Circuit's factual conclusion that carbon monoxide entered the decedents' room from Casino West's pool heater room "because the air intake openings had been blocked," which seems to indicate that the condition was temporary and unexpected, rather than a permanent air quality issue.

## CONCLUSION

For the reasons discussed herein, we conclude that neither the absolute pollution exclusion nor the indoor air quality exclusion clearly excludes coverage for carbon monoxide exposure under this case's circumstances. Therefore, we answer the certified questions in the negative.

_____, J.
Douglas

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Saitta

(O) 1947A