**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| THE ESTATE OF JOSIAH WHEELER, pursuant to the assignment of rights of insured Deborah Overly and Terry Summers; KEITH WHEELER; RHETTA WHEELER, individually and as representatives of the Estate of Josiah Wheeler, | No. 22-35484 |
| | D.C. No. 4:20-cv-00041-SLG |
| *Plaintiffs-Appellants*, | |
| | ORDER CERTIFYING QUESTION TO THE ALASKA SUPREME COURT |
| v. | |
| GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY, a subsidiary of USAA Insurance Company, | |
| *Defendant-Appellee*. | |

Filed September 6, 2023

Before: Mary H. Murguia, Chief Judge, and Richard A. Paez and Jacqueline H. Nguyen, Circuit Judges.

Order

# SUMMARY[*]

## Certification Order / Alaska Law

The panel certified the following question to the Alaska Supreme Court:

Does a total pollution exclusion in a homeowners' insurance policy exclude coverage of claims arising from carbon monoxide exposure?

## COUNSEL

Kenneth L. Covell (argued), Law Offices of Kenneth L. Covell, Fairbanks, Alaska, for Plaintiffs-Appellants.

Cheryl L. Graves (argued), Farley & Graves PC, Anchorage, Alaska, for Defendant-Appellee.

## ORDER

The Estate of Josiah Wheeler and Josiah's parents, Keith and Rhetta Wheeler, (collectively, "the Wheelers") appeal the district court's grant of summary judgment in favor of Garrison Property and Casualty Insurance Company ("Garrison"). Because this case involves an issue of first impression under Alaska law, we respectfully ask the Alaska

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Supreme Court to exercise its discretion to decide the certified question set forth in Part III of this order.

## I.

The facts underlying this case are undisputed.  In October 2018, seventeen-year-old Josiah Wheeler moved into a cabin owned by Deborah Overly and Terry Summers in Tok, Alaska.  Josiah was found dead in the cabin's bathtub in January 2019.  An autopsy showed that he died from acute carbon monoxide poisoning.  After an investigation, the deputy fire marshal determined that the cabin's water heater had emitted the carbon monoxide.  Summers had installed the water heater in the same small bathroom as the bathtub without connecting its flue to a venting system, in contravention of the heater's instruction manual.

At the time of Josiah's death, the cabin was covered by a homeowners' insurance policy that Garrison issued to Overly and Summers.  The policy contained the following pollution exclusion:

### SECTION II – EXCLUSIONS

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

. . .

k. Arising out of the actual, alleged, or threatened discharge, dispersal, release, escape, seepage or migration of "pollutants" however caused and whenever occurring. This includes any loss, cost or expense arising out of any:

(1) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain,

treat, detoxify, or assess the effects of "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

The Wheelers brought wrongful death and survivorship claims against Overly and Summers. Overly and Summers submitted an insurance claim to Garrison. In April 2019, Garrison denied liability coverage on the basis that carbon monoxide was a "pollutant" that fell under the policy's pollution exclusion.

In August 2020, Overly and Summers signed a confession of judgment in which they admitted liability for Josiah's death. They also assigned to the Wheelers their rights to pursue coverage claims against Garrison.

In December 2020, the Wheelers filed a declaratory judgment action against Garrison seeking a declaration of coverage and an award of damages. The parties filed cross motions for declaratory judgment, which the district court construed as motions for summary judgment. *See Est. of Wheeler v. Garrison Prop. & Cas. Ins. Co.*, 604 F. Supp. 3d 844, 845 & n.1 (D. Alaska 2022). The district court, concluding that the Wheelers' case fell within the pollution exclusion, denied their motion and granted summary judgment for Garrison. *Id.* at 853. The Wheelers appealed.

## II.

### A.

The pollution exclusion emerged in the 1970s to shield the insurance industry from "ever-increasing economic burdens due to environmental claims" under newly enacted air pollution laws by barring coverage for "government-mandated cleanup from long-term industrial pollution." 9 Couch on Insurance § 127:3 (3d ed. 2021). The original pollution exclusion was a "qualified" exclusion that restored coverage if pollution was "sudden and accidental." Claudia G. Catalano, Annotation, *What Constitutes "Pollutant," "Contaminant," "Irritant," or "Waste" Within Meaning of Absolute or Total Pollution Exclusion in Liability Insurance Policy*, 98 A.L.R.5th 193 (2002). Later versions of the exclusion eliminated that caveat, producing the modern "absolute" or "total" pollution exclusion. *Id.* The Garrison homeowners' insurance policy issued to Overly and Summers contained a total pollution exclusion.

Since the inception of the pollution exclusion, its scope "has been repeatedly litigated, spawning conflicting judicial decisions throughout the country." *Century Sur. Co. v. Casino W., Inc.*, 677 F.3d 903, 908 (9th Cir. 2012) (quoting *Apana v. TIG Ins. Co.*, 574 F.3d 679, 682 (9th Cir. 2009)). We have observed that "[m]ost state court decisions fall into one of two broad camps": they either find the exclusion's terms to be unambiguous and apply it literally, or they limit the exclusion to traditional environmental pollution due to ambiguity or the reasonable expectations of the insured. *Id.* (internal quotation marks omitted).

Many states have decisions in both "camps" because their courts make a fact-specific determination in each case, tailoring their analysis to the insurance policy and the cause

of the damage.[1]  State courts' approaches and the results in these cases thus vary according to the facts and over time.

This principle holds true when applied to carbon monoxide cases.  Some states have decided that carbon monoxide falls outside the total pollution exclusion after having previously held that its language was unambiguous with respect to a different substance.  For instance, a Nevada federal district court applying state law held that an exclusion was unambiguous as applied to hazardous waste in a landfill, *Mont. Refin. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 918 F. Supp. 1395, 1396 (D. Nev. 1996); years later, in response to our certified question,[2] the Supreme Court of Nevada nonetheless held that the exclusion did not bar coverage for deaths from carbon monoxide inhalation, *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614 (Nev. 2014).

State courts or federal courts applying the law of Massachusetts, Illinois, Ohio, Kentucky, Tennessee, Washington, and the District of Columbia have likewise held that carbon monoxide is outside the scope of the exclusion

---

[1] For example, the Alabama Supreme Court held that the exclusion was ambiguous and inapplicable in a case involving lead, *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789 (Ala. 2002), but that it unambiguously excluded coverage of damage caused by an underground gasoline leak, *Federated Mut. Ins. Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705 (Ala. 2007).  And after Connecticut's highest court held that contaminants in the soil and water at an industrial site clearly fell within the exception, *Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*, 819 A.2d 773 (Conn. 2003), its lower courts nonetheless held that the language was ambiguous as applied to asbestos, *see, e.g.*, *R.T. Vanderbilt Co. v. Hartford Accident & Indem. Co.*, 156 A.3d 539, 629 (Conn. App. Ct. 2017).

[2] *See Century Sur. Co.*, 677 F.3d at 905.

but reached the opposite conclusion about different substances.[3] Minnesota, Iowa, and Georgia have held that carbon monoxide falls within the pollution exclusion.[4]

---

[3] Massachusetts held that the exclusion did not apply to carbon monoxide but did apply to a home oil spill. *Compare W. All. Ins. Co. v. Gill*, 686 N.E.2d 997 (Mass. 1997), *with McGregor v. Allamerica Ins. Co.*, 868 N.E.2d 1225 (Mass. 2007). Illinois law does not exclude carbon monoxide damage but excludes damage from contaminated tap water. *Compare Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997), *with Scottsdale Indem. Co. v. Village of Crestwood*, 673 F.3d 715 (7th Cir. 2012). Ohio courts have declined to apply the exclusion to carbon monoxide or to aircraft fuel chemicals but have applied it to government mandated pollution cleanup costs. *Compare Andersen v. Highland House Co.*, 757 N.E.2d 329 (Ohio 2001), *and Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E.2d 687 (Ohio Ct. App. 2009), *with Danis v. Great Am. Ins. Co.*, 823 N.E.2d 59 (Ohio Ct. App. 2004). In Kentucky, the exclusion does not apply to carbon monoxide but does apply to nuclear material. *Compare Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky. Ct. App. 1996), *with Sunny Ridge Enters., Inc. v. Fireman's Fund Ins. Co.*, 132 F. Supp. 2d 525 (E.D. Ky. 2001). Courts applying Tennessee law have held that the exclusion does not apply to carbon monoxide but does exclude coverage for sulfuric acid and for human waste in the water supply. *Compare In re Idleaire Techs. Corp.*, No. 08-51227(KG), 2009 WL 413117 (Bankr. D. Del. Feb. 18, 2009), *with Sulphuric Acid Trading Co. v. Greenwich Ins. Co.*, 211 S.W.3d 243 (Tenn. Ct. App. 2006), *and CBL & Assocs. Mgmt., Inc. v. Lumbermens Mut. Cas. Co.*, No. 1:05-CV-210, 2006 WL 2087625 (E.D. Tenn. July 25, 2006). Washington state courts have not applied the exclusion to carbon monoxide or to diesel fuel but have excluded coverage for damage from sealant fumes. *Compare Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234 (Wash. 2017), *as modified* (Aug. 16, 2017), *and Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292 (Wash. 2000), *with Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733 (Wash. 2005). Courts applying District of Columbia law have not applied the exclusion to carbon monoxide but have held that it bars coverage for manganese fumes. *Compare Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 310 (D.C.2003), *reh'g en banc granted, opinion vacated,* 832 A.2d 752 (D.C. 2003), *and vacated pursuant to settlement*, 844 A.2d 344 (D.C. 2004),

B.

The question of how the Alaska Supreme Court interprets this homeowners' insurance policy pollution exclusion as applied to carbon monoxide may determine the outcome of this case. If the exclusion applies only to active industrial polluters or traditional environmental pollution, then there would be coverage in this case. In contrast, if the plain language unambiguously encompasses carbon monoxide exhaust from a residential water heater, coverage might be precluded unless that result contravenes the reasonable expectations of the insured. *See Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294–95 (Alaska 1994).

Existing Alaska law does not permit us to predict how the Alaska Supreme Court would resolve this issue. The Alaska Supreme Court has only once addressed the scope of an insurance policy's total pollution exclusion in a published decision. *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84 (2008). *Whittier* concerned an underground storage tank at a gas station that leaked over 50,000 gallons of gasoline into the surrounding soil. *Id.* at 87. Environmental authorities discovered the damage, investigated, and assessed penalties as well as cleanup costs. *Id.* at 87–88. Neighboring property owners also filed suit for property damage. *Id.*

---

with *Nat'l Elec. Mfrs. Ass'n. v. Gulf Underwriters Ins. Co.*, 162 F.3d 821 (4th Cir. 1998).

[4] *See Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628 (Minn. 2013); *Bituminous Cas. Corp. v. Sand Livestock Sys., Inc.*, 728 N.W.2d 216 (Iowa 2007); *Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90 (Ga. 2008).

The gas station owner submitted a claim for coverage under his commercial general liability insurance policy. The policy contained a clause excluding property damage arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.* at 89. The policy defined a "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 87, 89–91.

The Alaska Supreme Court held that the exclusion provision was unambiguous and covered the gasoline leak by its plain terms. The Court explained that the policy's other provisions and extrinsic evidence also supported a literal interpretation.

Garrison argues that *Whittier* conclusively establishes that the Alaska Supreme Court would interpret the pollution exclusion literally in the Wheelers' case. The district court recognized that *Whittier* did not address carbon monoxide but concluded that the Court's reasoning suggested a preference for literal interpretation and represented Alaska's choice of a "camp" in the national debate over the scope of the pollution exclusion. *Est. of Wheeler*, 604 F. Supp. 3d at 850–51.[5] *But see Sauer v. Home Indem. Co.*, 841 P.2d 176, 181 n.8 (Alaska 1992) (stating that the "new pollution exclusion language . . . 'shifts the emphasis to industrial sites'" (quoting 1 W. Freedman, Richards on the Law of Insurance § 5:2[d] (6th ed. supp. 1991))).

---

[5] In *Apana*, without much explanation, we listed Alaska as a member of the literal interpretation camp based on *Whittier*, calling it a "representative decision." 574 F.3d at 683 n.3. *Whittier*, however, concerned a commercial insurance policy and environmental pollution, and *Apana* did not analyze how its holding would impact a case with different facts.

Although the *Whittier* Court cited cases from other factual contexts, it explicitly tailored its holding to coverage for a gasoline leak in a commercial general liability policy. *See, e.g.*, *Whittier Props., Inc.*, 185 P.3d at 94 (affirming the lower court judgment "[b]ecause the pollution exclusion unambiguously excludes leaked gasoline from coverage and the other policy provisions do not restore or otherwise provide coverage"). We therefore do not read the decision to suggest that the Alaska Supreme Court would bypass a fact-specific analysis in future cases involving different substances.

Ultimately, we are unable to predict how the Alaska Supreme Court would analyze the Wheelers' case without expanding state law. *See Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) (explaining that a federal court sitting in diversity "take[s] state law as it exists without speculating as to future changes in the law"). Pollution exclusion cases tend to set the rule for the specific pollutant at issue, and Alaska has not considered this exclusion in the residential context or in any case involving a nonindustrial pollutant that caused no environmental harm. *Whittier* thus places this case at a decision point in Alaska law, and the Alaska Supreme Court is best positioned to decide this question of first impression.

## III.

Pursuant to Rule 407 of the Alaska Rules of Appellate Procedure, we therefore respectfully certify to the Alaska Supreme Court the following question:

> Does a total pollution exclusion in a homeowners' insurance policy exclude

coverage of claims arising from carbon monoxide exposure?

This question of law "may be determinative of the cause" pending before us, and there appears to be "no controlling precedent in the decisions" of the Alaska Supreme Court. Alaska R. App. P. 407(a). We do not intend the form of this question to limit the Alaska Supreme Court's consideration of the issues relevant to this matter. If the Alaska Supreme Court decides to consider the certified question, it may reword the question in its discretion.

## IV.

Further proceedings in this court are stayed pending the Alaska Supreme Court's decision whether to accept review; and, if that Court accepts review, pending receipt of the answer to the certified question. This case is withdrawn from submission and shall be administratively closed until further order of this court. The parties shall notify this court whether the Alaska Supreme Court accepts the certified question in a joint report to be filed within seven days of the Alaska Supreme Court's decision. If the Alaska Supreme Court accepts the certified question, the parties will file a joint report every three months after the date of acceptance advising this court of the status of the proceeding. This panel retains jurisdiction over further proceedings upon receiving a decision from the Alaska Supreme Court.

The Clerk of Court is hereby ordered to transmit a copy of this order to the Alaska Supreme Court under the official seal of the United States Court of Appeals for the Ninth Circuit. *See* Alaska R. App. P. 407(d). Moreover, the Clerk of Court shall provide "copies of all or any relevant portion

of the record" to the Alaska Supreme Court upon request. *Id.*

> /s/ Mary H. Murguia
> Chief Judge Mary H. Murguia
> U.S. Court of Appeals for the Ninth Circuit